STATE OF NORTH CAROLINA v. JAMES EARL BLOUNT

No. 692SC258

(Filed 28 May 1969)

**1. Jury § 6— competency of jurors — discretion of trial court**
    The question of whether a juror is competent is one for the trial judge to determine in his discretion, G.S. 9-14, and his rulings thereon are not reviewable on appeal unless accompanied by some imputed error of law.

**2. Jury § 6— motion to excuse juror acquainted with State's witness**
    In this prosecution for armed robbery, the trial judge did not abuse his discretion in the denial of defendant's motion to excuse a juror who indicated during the trial that he was acquainted with a State's witness, the juror having stated that his acquaintance with the witness would not affect his verdict in the case.

**3. Criminal Law § 66; Robbery § 3— motion to strike testimony — credibility**
    In this prosecution for armed robbery, the court did not err in denying

defendant's motion to strike testimony by the prosecuting witness to the effect that he had known defendant ever since he was growing up when, in fact, the witness had not seen defendant for several years during which defendant had changed in appearance, it being for the jury to determine the weight to be given to such testimony.

**4. Criminal Law § 88; Witnesses § 8— argumentative and repetitious cross-examination**

In this prosecution for armed robbery, the court did not abuse its discretion in sustaining the State's objections to questions asked the prosecuting witness on cross-examination which were clearly repetitious and argumentative, particularly in view of the otherwise extensive cross-examination.

**5. Robbery § 5— instructions — expression of opinion — failure to instruct on subordinate feature of case**

In this prosecution for armed robbery in which certain testimony of one State's witness conflicted with that of another State's witness, the trial court expressed no opinion in the charge as to which version the jury should accept, and failure of the court to give specific instructions as to the contradictory nature of the State's evidence is not error where no request for such instructions was made.

APPEAL from *Fountain, J.,* January 1969 Criminal Session, BEAUFORT County Superior Court.

James Earl Blount (defendant) was charged in a proper bill of indictment with the felony of armed robbery. He entered a plea of not guilty and a jury was impaneled.

Jimmy Griffin (Griffin), the State's first witness, testified that he was sixty years of age; on Sunday, 11 February 1968, he was operating a combination filling station and grocery store located about six miles from the Town of Washington, Beaufort County; at approximately 1:15 p.m., he was alone in his store; a 1959 or 1960 model Pontiac automobile drove up and parked in front of his store; one of the four occupants, Willie Robert Mills (Mills), got out of the automobile and entered the store; Mills had a pistol, which he pointed at Griffin's stomach, and he pushed Griffin against a freezer; two other occupants, William Charles Mourning (Mourning) and the defendant, then entered the store; each had a pistol; the defendant helped tie Griffin's arms behind his back with his belt; the fourth occupant, Rudolph Langley (Langley) entered the store; Langley, who did not have a gun, was immediately recognized by Griffin; Mills and the defendant shoved Griffin down behind a soft drink box; a rifle was taken from the store, and money was taken from the cash register and Griffin's billfold; the four stayed in the store 25 to 30 minutes before leaving; Griffin freed himself in time to see the auto-

mobile departing in the direction of the Town of Washington; Griffin had not seen the defendant, who had previously lived in the community, for three to five years prior to 11 February 1968.

Mourning, the State's second witness, testified that he was 22 years old; on 11 February 1968 he was in New York and he did not participate in any robbery; the defendant talked with him on Monday, 12 February 1968, in Brooklyn, New York; the defendant said that he had gone to North Carolina with Mills, who was driving a 1959 Pontiac automobile; the defendant said that he had gone to Griffin's store and had committed the crime in question; the defendant had a pistol at that time; James Little, James Whitaker and Jesse Holliday had accompanied defendant to Griffin's store.

The defendant took the stand in his own behalf and testified that he had traveled from his home in Patterson, New Jersey, to North Carolina with Mills and several other persons; he arrived at his mother's home in the Town of Washington on Saturday morning, 10 February 1968; on Sunday, 11 February 1968, he got out of bed between 8:30 and 9:00 a.m.; he did not leave the house until approximately 4:00 p.m., at which time he went to visit his grandmother a few blocks away; he did not see Mills on Sunday until 5:30 or 6:00 p.m. when it was time to return to New Jersey; he did not know Griffin; the first time he had ever seen Griffin was the day of the trial; he was 23 years old, six feet eleven inches in height, and weighed 185 pounds; he had recently grown a mustache; if Griffin had seen him three to five years prior to the robbery, he had seen a teenage boy who weighed 130 to 135 pounds and who did not have a mustache. The defendant further testified that he had not committed the robbery, and he had not spoken with Mourning after his alleged participation in the crime.

Russell Graddy testified that he was the defendant's employer and that the defendant had a very good reputation in his community.

Carrie Blount, the defendant's mother, corroborated her son's testimony. However, she testified that he had visited Mills on Sunday morning, but that he stayed away only about 10 or 15 minutes.

Mills took the witness stand and corroborated the defendant's testimony. Langley then took the witness stand and denied his participation in the robbery or his presence in North Carolina on 11 February 1968.

Martha Stokes, the defendant's grandmother and the last defense witness, testified that he had visited her Saturday evening and that she did not see him Sunday.

---
STATE *v.* BLOUNT
---

From a verdict of guilty as charged and a sentence of not less than twelve years nor more than fifteen years, the defendant excepted and appealed to this Court.

*Attorney General Robert Morgan, Deputy Attorney General Harrison Lewis and Trial Attorney J. Bruce Morton for the State.*

*John A. Wilkinson for defendant appellant.*

CAMPBELL, J.

The record indicates that the evidence was submitted under Rule 19(d)(2) of the Rules of Practice in the Court of Appeals. However, the evidence in its present form should have been submitted under Rule 19(d)(1), because a reading of the transcript reveals that the evidence has been reduced to narrative form, except where "a question and answer, or a series of them, (have been) set out when the subject of a particular exception." Rule 19(d)(1). It is further noted that, contrary to Rule 19(d)(2), no appendix was set forth by the defendant in his brief.

**[2]** The defendant's first assignment of error is that the trial judge abused his discretion in failing to excuse a juror who indicated his acquaintance with Mourning, the State's second witness. After a plea of not guilty was entered and the jury impaneled, the following occurred during the direct examination of Griffin, the State's first witness:

"(GRIFFIN:) Mourning had a pistol too. One of them looked like —

JUROR: (Speaking from Jury Box) This fellow right here, I know him. When you said William Mourning, I didn't know him by that name. I have always known him by his nick name.

THE COURT: Are you well acquainted with him?

A Yes, he knows me.

The Court: I asked if you know him well.

A Fairly well. In other words, I say, 'old friends', actually I see him every once in a while. We get together for a little chat, something like that.

THE COURT: Mr. Juror, what is your name, please?

A James T. Williams.

The Court: You have just indicated you recognized the per-

son by the name of Mourning that you did not identify by that name a few moments ago?

A   Yes, sir.

The Court:   It may be that he will be a witness in the case. I don't know. His name has been mentioned, of course, by this witness.

A   Right.

The Court:   I want to ask you if the fact that you know him, the fact you know this man named Mourning, if that would have any bearing on your verdict in this case?

A   Is he related to the other fellows?

The Court:   I don't know. I never heard of him before. I don't know. I am asking, from your knowledge of him if it would cause you to have any feeling against the defendant, or against the State?

A   If there was any way of not serving in this case I really would not want to serve on it because I do know the persons.

The Court:   Well, that person is not on trial. You understand that, don't you?

A   I understand that he is not on trial.

The Court:   He is not on trial at this time. I can tell you that.

A   Oh, well, that is all right then.

The Court:   In view of that, would your knowledge of him, even if he becomes a witness, cause you to have any feeling against the defendant or against the prosecution, just because of your knowledge of this man named Mourning, that is what I want to know?

A   I don't think so.

The Court:   Have you got any doubt about it?

A   I believe I could make a sound judgment on the case.

The Court:   You say you believe you can, I want to be sure about it?

A   I can.

MR. WILKINSON:   I ask Your Honor, in your discretion to excuse this juror.

The Court:   Well, I deny your request."

In his brief, the defendant argued that it was an abuse of discretion to compel him "to be tried by a juror whose connection with the case had been concealed". However, this connection was immediately brought to the attention of the trial court when discovered, and the concealment, if any, was clearly not deliberate, intentional or prejudicial. The defendant further argued that he "was given no opportunity to inquire into the extent or depth of" this connection. However, the record reveals no attempt by defense counsel to make any inquiry.

[1, 2]  The question of whether a juror is competent is one for the trial judge to determine in his discretion. G.S. 9-14. "(H)is rulings thereon are not subject to review on appeal, unless accompanied by some imputed error of law." *State v. Spencer,* 239 N.C. 604, 80 S.E. 2d 670. In the instant case, there is neither an imputed error of law nor an abuse of discretion in the denial of the defendant's motion to excuse the juror.

This assignment of error is without merit.

[3]  The defendant's second assignment of error is that the trial judge erred in denying his motion to strike the following answer of Griffin on direct examination:

"Q  How long have you known him altogether?

A  Well, I been knowing of (the defendant) ever since he was growing up, when he was growing up.

MOTION TO STRIKE  OVERRULED"

In his brief, the defendant argued that this answer was unresponsive. However, the question was proper and the answer was clearly responsive. It was also argued that the answer was highly prejudicial, because it "emphasized the alleged familiarity of the witness with" the defendant when, in fact, Griffin had not seen him for several years. During this time, the defendant "had changed from a boy of seventeen to a man of twenty-two, grown a moustache, and gained sixty pounds". However, this answer was admissible, and it was for the jury to determine what weight should be given to it. *State v. Orr,* 260 N.C. 177, 132 S.E. 2d 334; *State v. Perry,* 3 N.C. App. 356, 164 S.E. 2d 629. No prejudice has been made to appear.

This assignment of error is without merit.

[4]  The defendant's third, fourth, fifth, sixth and seventh assignments of error all relate to the contention that the trial judge abused his discretion in sustaining the State's objections to the following

questions propounded by defense counsel on the cross-examination of Griffin:

"Q   You tell this Jury you can identify a person after five years, a man wearing a beard, five years later, and a mustache, and identify him from somebody you can not even remember had a mustache or not?

OBJECTION   SUSTAINED

.  .  .

Q   I thought you had testified that is where it was?

OBJECTION   SUSTAINED

.  .  .

Q   Certainly, Mr. Griffin, you know what a beard is?

OBJECTION   SUSTAINED

The Court:   Mr. Wilkinson, start off, ask the witness a question. Don't tell him what he knows or does not know, please.

Mr. Wilkinson:   It is cross-examination, Your Honor.

The Court:   You may examine him but don't tell him.

.  .  .

Q   Do you tell this Jury, Mr. Griffin, that you can recognize somebody after he is grown by his appearance as a boy?

OBJECTION   SUSTAINED

.  .  .

Q   The truth of the matter is, you don't have any recollection of having seen him at any particular period before then, do you?

OBJECTION   SUSTAINED"

It is noted in passing that, contrary to Rule 28, the defendant's brief does not include references to the pages of the record for all of his assignments of error.

"One of the most jealously guarded rights in the administration of justice is that of cross-examining an adversary's witnesses." Stansbury, N. C. Evidence 2d, § 35. However, "(i)t is the duty of the trial court to protect a witness on cross-examination from being unfairly dealt with, and cross-examining counsel should not be permitted to browbeat, bulldoze, or intimidate a witness. . . ." 98 C.J.S., Witnesses, § 410, p. 211. Therefore, "the allowing of . . . questions (calling for a repetition of testimony already given) ordinarily rests in the discretion of the trial court, and the court acts properly within its discretion when it refuses to permit further

STATE v. BLOUNT

cross-examination, where unduly repetitious. . . ." 98 C.J.S., Witnesses, § 414, p. 217. "Other questions disallowed are those which are argumentative. . . ." 98 C.J.S., Witnesses, § 411, p. 211. See *In re Will of Kemp*, 236 N.C. 680, 73 S.E. 2d 906.

The questions *supra* were clearly repetitious and argumentative, and there was no abuse of discretion by the trial judge in sustaining the State's objections, particularly in view of the otherwise extensive cross-examination.

These assignments of error are without merit.

[5] The defendant's eighth, ninth, tenth and eleventh assignments of error relate to the contention that the trial judge erred in his charge to the jury.

The defendant argues that the testimony of the two witnesses for the State was diametrically opposed, since Griffin testified to the involvement of the defendant, Mourning, Mills and Langley, while Mourning testified to the involvement of the defendant, Little, Whitaker and Holliday. The defendant says it was incumbent upon the trial judge to make no "election" between the two versions, but that the trial judge did make an "election" and hence committed error by the expression of an opinion. A careful review of the charge reveals that the trial judge did not make such an "election" and he expressed no opinion. He gave the contentions of both the State and the defendant and left the determination of guilt or innocence to the jury. If the defendant desired any further instruction as to the contradictory nature of the State's evidence, a request should have been made. "Failure to charge on a subordinate — not a substantive — feature of a trial is not reversible error in the absence of request for such instruction." *State v. Pitt*, 248 N.C. 57, 102 S.E. 2d 410. Under the circumstances "(i)t was not inappropriate for the court to leave to counsel for the State and counsel for defendant, respectively, the making of contentions relating to the credibility of the witnesses and the probative value of their testimony." *State v. Jones*, 249 N.C. 134, 105 S.E. 2d 513.

These assignments of error are without merit.

The charge when taken as a whole and in context was not prejudicial to the defendant.

No error.

MALLARD, C.J., and MORRIS, J., concur.