STATE OF NORTH CAROLINA v. JAMES BRYAN WATSON

No. 7112SC657

(Filed 15 December 1971)

**1. Constitutional Law § 30— speedy trial**

The right to a speedy trial is relative and guards against arbitrary and oppressive delays due to the fault of the prosecuting authorities.

**2. Constitutional Law § 30— speedy trial — delay between warrant and trial**

Defendant was not denied his right to a speedy trial by a delay of 21 months between the issuance and execution of a warrant charging him with murder and his trial on that charge, where defendant was out on bail for most of that time, the trial was delayed on two occasions when defendant asked for continuances, and the record does not show that defendant was prejudiced by the delay.

**3. Homicide § 21— first degree murder — sufficiency of evidence**

The State's evidence was sufficient for the jury in this prosecution for first degree murder where it tended to show that defendant had bumped into deceased while in a lounge and that deceased told defendant, "I will see you later," that defendant left the lounge and then returned, walked over to deceased, slapped him and stabbed him with a knife, that defendant had blood on his shirt when arrested a short time after the crime, that a knife with fresh bloodstains on it was found in defendant's jail cell after his arrest and defendant stated that he hid the knife in his shoe, that defendant stated while in custody that "If he is dead, I killed him," and that deceased died from hemorrhage and asphyxia as a consequence of the stab wound.

**4. Jury § 5— competency of juror — discretion of court**

The question of the competency of a juror is ordinarily one for the trial judge to determine in his discretion, and his rulings thereon are not subject to review on appeal unless accompanied by some imputed error of law.

---

State v. Watson

---

5. **Jury § 5— juror who was solicitor's father-in-law**

   The trial court did not err in the denial of defendant's challenge for cause of a prospective juror who was the father-in-law of the solicitor for the district, where the prosecution was handled by an assistant solicitor and the solicitor took no part in the trial, and the trial judge conducted a voir dire and determined to his satisfaction that the juror would not find the defendant guilty simply because the juror was the solicitor's father-in-law.

6. **Criminal Law § 80; Death § 1; Evidence § 28— certified copy of death certificate**

   In this homicide prosecution, a certified copy of the victim's death certificate was properly admitted for the purpose of proving the time, place and cause of the death.

7. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— exclusion of jurors opposed to death penalty**

   In this first degree murder prosecution, the trial court did not err in the exclusion of prospective jurors who stated they could never return a verdict requiring the death penalty; furthermore, defendant was not prejudiced thereby where he was convicted of the non-capital crime of second degree murder.

APPEAL by defendant from *Cooper, Judge,* 19 April 1971 Session of CUMBERLAND Superior Court.

By indictment proper in form, defendant was charged with the first degree murder of Billy Gene Horner. The jury returned a verdict of guilty of murder in the second degree and from judgment imposing prison sentence of not less than 25 nor more than 30 years, defendant appealed.

*Attorney General Robert Morgan and Assistant Attorney General James E. Magner, Jr., for the State.*

*Downing, David and Vallery by Edward J. David for defendant appellant.*

BRITT, Judge.

Defendant assigns as error the denial of his motion for dismissal of the prosecution for failure of the State to bring him to a speedy trial. The record reveals the following sequence of pertinent events: The alleged offense occurred on 19 July 1969 and warrant was issued and executed on that date. On affidavit of defendant's indigency, E. J. David was appointed as legal counsel for defendant evidently on 21 July 1969. On 30 July 1969, a district court judge found probable cause and defendant was bound over to superior court without privilege of bond. On

12 August 1969, on motion of defendant's attorney, Judge Bickett entered an order committing defendant to State Hospital for 60 days for a determination of defendant's sanity and his mental ability to plead to the charges against him. At the 22 September 1969 Session of the court a true bill of indictment was returned charging defendant with first degree murder. On 2 October 1969 (obviously after defendant was returned from State Hospital to the Cumberland County Jail), Judge Bickett entered an order that defendant be transferred to Central Prison in Raleigh to be detained pending further order of the court. On or about 1 November 1969 defendant filed petition for habeas corpus asking that he be released from State Prison and given a speedy trial. On 12 December 1969 defendant was allowed bail and from that date until the date of his trial was free on bail except for a brief interval when his bondsman "went off his bond." On 15 December 1969 Judge Bickett entered an order denying the petition for habeas corpus. Defendant made no motion for a trial after he was allowed bail and on two occasions his attorney moved for and was granted postponements of the trial. When the case was called for trial at the 19 April 1971 Session, defendant through his counsel moved for a further continuance but this motion was denied.

[1, 2]  Defendant fails to show how any delay was prejudicial to him. The witnesses that were not present at the trial had not been subpoenaed to appear. The right to a speedy trial is not designed as a sword for a defendant's escape, but a shield for his protection. *State v. Patton*, 260 N.C. 359, 132 S.E. 2d 891 (1963). "No general principle fixes the exact time within which a trial must be had. Whether a speedy trial is afforded must be determined in the light of the circumstances of each particular case. In the absence of a statutory standard, what is a fair and reasonable time is within the discretion of the court." *State v. Lowry*, 263 N.C. 536, 542, 139 S.E. 2d 870, 875 (1965). The right to a speedy trial is relative and guards against arbitrary and oppressive delays due to the fault of the prosecuting authorities. *State v. Lowry, supra.* Such is not the case here. The possibility of unavoidable delay is inherent in every criminal action. *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969). In this case no prejudice to defendant is shown and the record reveals that defendant himself was responsible for the delay on two occasions by asking for continuances. Under the

State v. Watson

facts of this case, we hold that there was no denial of a speedy trial.

[3] Defendant assigns as error the failure of the court to grant his timely made motions for nonsuit. A review of pertinent testimony most favorable to the State is summarized as follows:

On 19 July 1969 at about 4:15 p.m. Horner, the deceased, and Shelton David Tew were standing and drinking beer at a bar in Gib's Lounge in the City of Fayetteville. Defendant, an acquaintance of Horner and Tew, entered the front door of the lounge, "bumped into" Horner, then went on to the other end of the bar. Some five minutes later Horner, Tew and Jesse Pittman sat down at a booth in the lounge with the intention of playing checkers. As Horner walked from the bar to the booth he passed close to defendant and told him, "I will see you later." In the booth Horner and Tew were sitting on one side of the table with Horner on the inside and Pittman was sitting on the other side of the table. About the time Horner, Tew and Pittman sat down at the booth, defendant left the lounge. Some five minutes later defendant returned to the lounge, walked directly to the booth where Horner was sitting, leaned across the table in front of Tew and said to Horner, "So you will see me later, will you?" Defendant then slapped Horner twice after which Horner, still sitting, "backed up" and raised his hands which had nothing in them. Defendant then stuck a knife in the left side of Horner's neck near the bottom of his ear, the blade of the knife being some four inches long and "pretty wide." Defendant then withdrew the knife from Horner's neck, walked away from the booth and stood around in the lounge. On being cut, Horner began bleeding profusely. He got up from the booth and rapidly becoming weaker, propped himself against a pool table in the lounge. Tew helped Horner out of the lounge and down the street some 75 or 100 feet from the lounge where Horner propped himself against a car. Tew telephoned for an ambulance and when he returned to Horner he had slipped down on the street where he continued to bleed profusely from the wound, his nose and mouth. An ambulance arrived shortly thereafter and carried Horner away. Horner died a little later that day, the immediate cause of death being hemorrhage and asphyxia due to or as a consequence of stab wound of the left neck.

Very shortly after Horner left in the ambulance, police officers arrested defendant at the Fayetteville home of defend-

ant's parents. He had blood on his shirt at that time. While in custody defendant made the statement, "If he (Horner) is dead, I killed him." Horner was not armed at the time of the stabbing. A knife with fresh blood stains on it was found in defendant's jail cell after he was arrested and defendant stated that he hid the knife in his shoe.

Considering the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference which may legitimately be drawn therefrom, with contradictions, conflicts and inconsistencies being resolved in the State's favor, the evidence was more than sufficient to survive the motions for nonsuit. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967); *State v. Jerman,* 9 N.C. App. 697, 177 S.E. 2d 327 (1970). In fact, the evidence would have supported a verdict of first degree murder. The assignment of error is overruled.

[4] Defendant assigns as error the failure of the court to allow his challenge for cause of the solicitor's father-in-law as a juror. The question of competency of a juror is ordinarily one for the trial judge to determine in his discretion. G.S. 9-14. "(H)is rulings thereon are not subject to review on appeal unless accompanied by some imputed error of law." *State v. Spencer,* 239 N.C. 604, 610, 80 S.E. 2d 670, 674 (1954). See also *State v. Degraffenreid,* 224 N.C. 517, 31 S.E. 2d 523 (1944); *State v. Blount,* 4 N.C. App. 561, 167 S.E. 2d 444 (1969).

[5] Our Supreme Court has held that the relationship between a juror and a witness within the ninth degree, standing alone, is not legal ground for challenge for cause. *State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833 (1969). In this case the relationship is between a juror and the solicitor; however, the record shows that the solicitor took no part in the trial of the case, the prosecution being handled by a member of the solicitor's staff. The judge properly conducted a voir dire and determined to his satisfaction that the juror would not find the defendant guilty simply because the solicitor who was not prosecuting was the juror's son-in-law. This decision in the absence of showing of abuse of discretion is not reviewable upon appeal.

[6] Defendant's next assignment of error relates to the admission into evidence of portions of a certified copy of Horner's death certificate and overruling the defendant's objection to

it on the grounds of denial of confrontation of witnesses and that the certificate stated opinion and not facts.

It is the duty of appellant to see that the record is properly made up and transmitted. *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969); *State v. Evans,* 8 N.C. App. 469, 174 S.E. 2d 680 (1970). The record does not contain the death certificate or show that part of the certificate which the court read to the jury. We assume it was the part that is summarized in the court's charge to the jury as follows: "The State further offered evidence in the form of an authenticated copy of a record of the Office of Vital Statistics of the State of North Carolina, State Board of Health, which in substance tends to show that Billy Gene Horner died in Cumberland County on July 19, 1969, and that the immediate cause of death was hemorrhage and asphyxia due to or as a consequence of stab wound of the left neck."

G.S. 130-66 provides in pertinent part as follows:

"(a) The State Registrar shall, upon request, issue to any authorized applicant a certified copy of the record of any birth or death registered under provisions of this article. Such certified copy of the birth record shall show the date of registration, and such other items as may be determined by the State Registrar.

"(b) The State Registrar is authorized to prepare typewritten, photographic, or other reproductions of original records and files in his office. Such reproductions, when certified by him, shall be considered for all purposes the same as the original and shall be prima facie evidence of the facts therein stated."

G.S. 130-66 supersedes the statute formally codified as G.S. 130-73 which contained a proviso as follows: "Any copy of the record of a birth or death, properly certified by the State Registrar, shall be prima facie evidence in all courts and places of the facts therein stated." In interpreting certain provisions of G.S. 130-73, and particularly the proviso just quoted, the Supreme Court in *Branch v. Dempsey,* 265 N.C. 733, 748, 145 S.E. 2d 395, 406 (1965), opinion by Lake, Justice, said: "The purpose of the statute appears to be to permit the death certificate to be introduced as evidence of the fact of death, the time and place where it occurred, the identity of the deceased, the bodily

injury or disease which was the cause of death, the disposition of the body and possibly other matters relating to the death." We hold that the portions of the certified copy of the death certificate introduced in evidence in this case were competent for the purposes for which they were admitted and the assignment of error relating thereto is overruled.

[7] Defendant's last assignment of error relates to the allowance of challenges for cause of jurors who did not believe in capital punishment. Under authority of *State v. Miller*, 276 N.C. 681, 174 S.E. 2d 481 (1970), this assignment of error is overruled. Furthermore, defendant fails to show how he was prejudiced by the jurors so challenged since he was not convicted of a capital crime.

Upon a careful review of the entire record, we find

No error.

Judges BROCK and VAUGHN concur.