IN THE MATTER OF THE COMPLAINT FOR SEARCH WARRANT AND SEIZURE THERE-UNDER, THE STATE OF WYOMING,

*Respondent and Appellee,*

vs.

JOHN J. BRANNEY, *Intervener and Appellant.*

(No. 2300; July 10th, 1945; 160 Pac. (2d) 972)

For the intervener and appellant the cause was submitted upon the brief and also oral argument of Bryant S. Cromer of Casper, Wyoming.

For the resopndent the cause was submitted upon the brief of Louis J. O'Marr, Attorney General, and Hal E. Morris, Deputy Attorney General, both of Cheyenne, Wyoming, and oral argument by Mr. Morris.

## OPINION

RINER, Justice.

This is a direct appeal proceeding seeking the review of a final order of the district court of Natrona County, Wyoming, which directed the destruction of certain slot machines seized by and held in the possession of the sheriff of said county.

The facts material to be considered as shown by the record herein are substantially these:

A written complaint signed and sworn to by some seven persons and addressed to the Honorable C. D.

Murane, Judge of District Court of the county above mentioned stated that a "large number of gambling devices, particularly known and described as slot machines" were located at a designated and described warehouse in the City of Casper, Natrona County, Wyoming; that said machines were devised or designed for the purpose of carrying on a game of chance prohibited by the laws of Wyoming, and are declared by Sec. 32-525, W. R. S. 1931, to be a nuisance. The complaint prayed that in accordance with said section of the statutes the Judge issue forthwith a search warrant directed to the sheriff or constable of said county commanding such officer to search for, seize and bring before said Judge "such gambling devices, towit slot machines; and that upon proof of its character as such thereupon to cause the same to be destroyed by burning or otherwise." This complaint was verified the 15th day of February, 1944, and filed in the office of the Clerk of said District Court, February 19, following.

A search warrant was thereupon issued under date of February 15th, 1944, by the Judge aforesaid, directed to the sheriff of said county commanding him to search said premises forthwith for said slot machines and if found "to seize and bring the same before the court forthwith". This warrant was duly executed and twenty-five slot machines were seized on February 19, 1944, according to the return of the deputy sheriff who made the search. On the 29th of that month an affidavit of this officer was filed more particularly describing the seized property, which affidavit was attached to a petition also filed, signed and verified by the County and Prosecuting Attorney of said County, requesting the destruction of this property which was alleged to be then in the possession of the sheriff of said county. The same day a court order was made requiring the sheriff of Natrona County, Wyoming, "to

produce the property described in said Petition before this Court at the Court Room in the Court House, Casper, Natrona County, Wyoming, on 8th day of March, 1944, at the hour of ten o'clock in the forenoon of said day at which time and place such order will be made by this court as shall be proper in the premises". The order also directed that certified copy thereof be served upon the party named in the above mentioned petition of the County Attorney as the person to whom said machines belonged. This the sheriff did, such service being made on March 1, 1944.

March 9, 1944, there was filed in this matter a "Petition in Intervention" by one John J. Branney, duly verified by him, wherein it was alleged in substance that he is the owner of the personal property mentioned in the petition of the County Attorney aforesaid; that this property was seized by the sheriff of Natrona County, Wyoming, under a "pretended" search warrant and that "same is now in the possession of" said sheriff; that said property at the time of such seizure was located in the warehouse of a named transfer and storage company and "that said personal property was at said warehouse for the purpose of storage and shipment out of the State of Wyoming and was not at said time being used for the purpose of playing, conducting or carrying on any game of chance or was not being used for any other purpose". The prayer of the intervening petitioner was that the county attorney's petition be denied and that the court order the sheriff to deliver said property to the intervener "for the purpose of shipment out of the State of Wyoming".

The same day that the petition in intervention was filed the matter came on to be heard before the court. Evidence was submitted on behalf of the state and testimony was given by the deputy sheriff who made the seizure of these machines. After testifying to the

fact that the property was taken under search warrant the officer was asked:

"Q. Will you please just describe those machines generally?

"A. Well, they were ordinary slot machines of one cent, five cents, ten cents, twenty-five cents and I believe there was a fifty-cent and a dollar machine."
After an objection by counsel for intervener, the witness continued thus:

"A. I said I believed there was, I didn't know for sure. They are machines, coin receptacle machines; they have a slot for the money, and they have certain payoffs. There is a card on the front, it pays three, five fifteen, eighteen and a jackpot."

The officer was then asked and his answers were:

"Q. You mean by pay-off, they are marked to indicate what it paid?

A. Yes, sir.

Q. Could you see money inside?

A. Yes.

At the conclusion of the testimony of the officer the state moved for an order as prayed in the county attorney's petition. However, the court directed the intervener to proceed further in the matter. Thereupon his counsel read to the court the petition in intervention hereinabove described. The assistant county and prosecuting attorney then stated to the court, "the State demurs to the petition on the grounds that it does not state facts sufficient to entitle the Intervener to any relief whatever." No direct ruling on this demurrer seems to have been made at the time by the court but intervener was directed to proceed with the introduction of his evidence.

The intervener was then called as a witness in his own behalf. Whereupon counsel for the state objected

"to the introduction of any testimony on the grounds
that there is no pleading before this Court sufficient to
entitle the Intervener to any relief whatever." The
court's ruling on this objection was "overruled for the
present" and an exception to the ruling was allowed.
After testifying that he was the owner of the ma-
chines in controversy; that they had been stored in the
warehouse where they were seized for the purpose of
crating and shipping same to a purchaser whose check
in part payment therefor was, over objection by the
state, received in evidence, the intervener testified in
part on cross examination as follows:

"Q.   What are these machines, Mr. Branney?

A.   Slot machines.

Q.   Mechanical devices operated with coins?

A.   Yes, sir.

Q.   And by placing a coin in the machine, one stands
a chance to receive more than he puts in. It that a fact?

A.   Yes, sir.

Q.   And all the machines are the same?

A.   Yes, sir."

The testimony thus given stands in the record undis-
puted. The evidence in the case was closed with the
testimony of the maker of the check aforesaid, he be-
ing a resident of Salt Lake City, Utah, to the effect that
he had "made a deal for the twenty-five machines, the
subject of this action" and that the check was a de-
posit thereon.

Upon argument and submission of the matter for
decision the court found "That those certain slot
machines seized under and by virtue of the search war-
rant, issued herein and described in the Sheriff's Re-
turn upon said search warrant, are machines designed
and devised for gambling purposes, and as such are

hereby declared to be a nuisance as defined by Section 32-525, Wyoming Revised Statutes, 1931, and should be destroyed". The destruction of the machines in question was upon this finding ordered. This order was dated the 9th of March, 1944, and entered in the court's journal the following day. Upon bond being filed by intervener a stay order was thereafter entered and this appeal prosecuted from the action of the court directing the destruction of these machines.

Section 32-525, W. R. S. 1931, the statute under which these proceedings were had, reads:

"Any gambling table, gambling device, or paraphernalia adopted, devised, or designed for the purpose of playing, conducting, or carrying on, any game of chance, prohibited by the laws of this state, is hereby declared to be a nuisance, and whenever a written complaint signed by the complainant under oath, alleging that he verily believes that any such gambling table, gambling device or paraphernalia is located at any place within this state, describing such gambling table, device or paraphernalia by name, and naming the place of its location, is presented to any district judge or justice of the peace, within whose jurisdiction the same is alleged to exist, it shall be his duty to forthwith issue his warrant, in the form prescribed by law for search warrants, directed to the sheriff or constable, commanding such officer to search for, seize, and bring before him such gambling table, device or gambling paraphernalia, and upon proof of its character, as such, thereupon to cause the same to be destroyed by burning or otherwise."

It may be here noted that the statute reads "adopted, devised, or designed". Undoubtedly the word "adopted" is typographically an error and should be read "adapted".

The only question raised by intervener in his brief and argument submitted is, as he states, "That before any device can properly be ordered to be destroyed, it must be proved that such device had been used for an

unlawful purpose." The petition in intervention reviewed above it may be here mentioned, merely alleges that the machines seized were not then "being used for the purpose of playing, conducting or carrying on any game of chance or" were "not being used for any other purpose."

Summarized, so far as this case is concerned, the statute quoted above enacts that "any gambling device" or "paraphernalia" designed for carrying on any game of chance prohibited by the laws of this state is "declared to be a nuisance". After indicating the procedure to be followed in bringing such articles before the district judge the law concludes, "upon proof of its character, as such," its destruction is to be ordered.

Sec. 32-522, punishes as for a misdemeanor,

"Every person who shall deal, play, carry on, open, or cause to be opened, or who shall conduct, either as owner or employe, whether for hire or not, any slot machine, game of faro, monte, roulette, lansquenette, rondo, vingtun, commonly known as twenty-one, keno, props, or any other game played with cards, dice or other device of whatever nature, for money, checks, credit, or other representatives of value, * * *."
This section, it is evident, supplies a definition of what is meant by the language in § 32-525, viz. "paraphernalia" designed for carrying on "any game of chance prohibited by the laws of this state"; and it is to be observed that heading the list of games prescribed is "slot machine".

What then is a "gambling device" and is it necessary under the statute, § 32-525, supra, that a device of that character must be used in gambing before it may be seized and destroyed? The following citation of authorities which does not undertake to be in any degree exhaustive does, we think, throw much light on these questions.

The United States Circuit Court of Appeals for the Tenth Circuit, in Boynton, Attorney General of Kansas v. Ellis, 57 Fed. 2d 665, states that:

"The principle generally sustained by the courts is that, 'where one who plays a slot machine stands to win or lose money, trade, or checks, by hazard or chance, the machine is a gambling device.' 27 C. J. p. 989. Otherwise stated, it is that 'any slot machine * * * will be deemed to be an unlawful gambling device, where the one who pays the machine stands to win or lose money, trade checks, or prizes, by a chance, or more broadly, where there is an element of chance in its operation.' 12 R. C. L. p. 730.

"These texts are supported by a wealth of decisions." In Board of Police Commrs. for The City of Baltimore v. Wagner, 93 Md. 182, 48 Atl. 455, we find the court declaring very aptly:

"If, at midnight, a policeman find a person on the streets laden with burglar's tools hidden on his person, is he to permit him to go his way with his illegal burden? Is not the seizure of these instruments of crime a proper and reasonable thing for him to do? Would it not be conducive to the prevention of crime for the police officer charged with the enforcement of the law, and the prevention of crime, to do that? Must the owner be allowed to retain them until it can be shown that he has already made an illegal use of them or intends so to use them? So, also, as to a slot machine, conceded in this case, to be incapable of being used for legal purposes, it is a most effective manner of preventing its use, to seize it as 'outlawed' property. The duty to prevent crime carries with it in such a case the power to summarily seize the offending article. It would be anomalous to hold that the Legislature in imposing on the policeman an obligation to prevent crime, intended to deny him one of the most effective means of performing such obligation. The power of the Legislature to confer this authority, under the police power, cannot be questioned."

Where the law (§ 1, Act No. 231, of 1928) provided:

"Be·it enacted by the Legislature of Louisiana, That all officers of the State of Louisiana are hereby authorized and empowered, and it is made mandatory and compulsory on their part, to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention, or that they may find in operation,"

it appeared that certain gambling devices known as slot machines had been seized by the sheriff and it was sought to restrain that officer from destroying them. The principal point stressed in Schimpf v. Thomas, Sheriff, 204 La. 541, 15 So. 2d 880, under these facts and law was that:

"since the machines were not in operation at the time they were seized by the sheriff, 'the Sheriff was without the authority or power to destroy them', *,* * *."

It further appeared in the case that these machines:
"were stored in plaintiff's warehouse when found by the sheriff. They were not being operated at that time. The warehouse was closed and locked,"
and that,

"They were all automatic pay-off machines, according to the testimony of the sheriff, who seized them, and according to the testimony of the chief of police of the Town of Jonesboro, who was with the sheriff when the seizure was made."

Rejecting counsel's contention as above outlined the court said:

"There is no merit in plaintiff's argument, for the reason that the act specifically provides that it is the mandatory duty of the officers 'to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention, or that they may find in operation';·so that, under the precise language of the act, if such machines come to the attention of the officers, they must be confiscated whether they are being operated or not."

Through the Pa. Criminal Code of June 24th, 1939, P. L. 872, it is provided by Section 603 thereof that:

"whoever maintains any gambling device or apparatus to win or gain money or other property of value" is guilty of a misdemeanor; by Section 605 thereof that: "Whoever sets up or establishes or causes to be established any game or device of address, or hazard, at which money or other valuable thing may or shall be played for, or staked or betted upon, is guilty of a misdemeanor," and Section 612 of the same Code enacts: "Whoever keeps or exhibits any gaming table, device or apparatus to win or gain money or other property of value, is guilty of a nuisance, a misdemeanor." The law of that jurisdiction also provides for seizure by any officer of any machines of any kind, character or description whatsoever used and employed for the purpose of unlawful gaming and upon such seizure for a court hearing concerning the matter and an adjudication forfeiting such instruments of gaming and directing that they be publicly destroyed.

On April 9th, 1940, it appeared by the return to the Court of the officer who acted in the matter, that he had seized twenty-five slot machines and twenty slot machine stands at the Railway Express Agency, Inc., Masontown, Pa. This return was filed in connection with the petition of the District Attorney of Fayette County wherein the officer averred that the slot machines and stands were not adaptable to any lawful use, and could be used only as gambling devices for gambling purposes and it was asked that the articles thus seized be forfeited and destroyed. An answer was filed by respondent denying the jurisdiction of the court to destroy these articles.

Upon a hearing before the Court, it was stipulated that the slot machines at the time of seizure were "securely crated and steel strapped and had not been unpacked"; that the steel folding stands were separately packed in bundles of two each; that the respondent

was the owner of these articles, when they were seized and that he had no knowledge as to the purposes to which the machines were to be put by the purchaser; that at the time of the seizure of these machines they were not being used or employed for gambling and had not been so used; and also that the machines were per se gambling devices and could not be used for any lawful purpose.

After reviewing authorities at length, the Court announced in Commonwealth ex rel. vs. Twenty-five Slot Machines, 88 Pit. L. J. 465, its conclusions that:

"We are all of one opinion that these slot machines cannot be returned to the respondent. We regard them as 'outlaws' properly in the custody of the court. We find no legal warrant in any of the statutory enactments that authorizes their return. We have no authority, legal or moral, to again put into circulation these gambling devices admitted to be incapable of any lawful use. We can properly perform our duty in this case only by ordering the destruction of the slot machines.

"The stands which were also seized are somewhat different. The stipulation agrees that they may be used for lawful purposes. That being the case they cannot be confiscated without evidence that they have been actually used in the act of gaming. There is no evidence in this case as to the use of the stands. They will, therefore, be returned to the respondent.

"The court finds that these slot machines are gambling devices, used and intended to be used for the purpose of unlawful gaming. The court judges them forfeit and orders that they be publicly destroyed."

Certain so-called "pinball machines" had been seized by officers and in the case of Approximately Fifty-nine Gambling Devices v. People, ex rel, Burke, Dist. Atty., 110 Colo. 82, 130 Pac. 2d 920, it appeared that the manager of the corporation in whose place of business the machines were found and seized had been acquitted on

the charge of having kept and used them for the purpose of gambling. This fact was interposed as a defense to their destruction which was requested by the district attorney. The trial court sustained a demurrer to this defense. Though the law of the State of Colorado directed that when the seized articles were brought before the judge he should "ascertain that the same are used or kept for the purpose of gambling or playing at any game or games of chance," yet the court affirmed the ruling below on the demurrer and said:

"The contention that the pinball devices had never been used for gambling purposes, while true in the instant case, does not defeat the state's right and power to destroy them. This is definitely settled in the Stanley-Thompson Company case, supra, wherein we said (63 Colo. at page 459, 168 P. at page 751):

'The keeping and use of these devices being prohibited by statute, they are a common nuisance. Mullen & Co. v. Mosely, supra. (13 Idaho 457, 90 P. 986, 12 L. R. A., N. S., 394, 121 Am. St. Rep. 277, 13 Ann. Cas. 450).

'Having in mind these principles, we are unable to agree with the contention that the seizure of such instruments was intended by the lawmakers only when they were in actual use. Since they are at all times a menace to society, not being capable of use except by violating the law, there is no reason why their abatement as a nuisance should be delayed until the law has been violated.

'We regard the words "used or kept", not as describing the status of the devices as to use or otherwise at the time of seizure, but as descriptive of a class composed of things which are commonly used or kept for gambling.

'If an instrument falls within that class, it is subject to the statute'."

Holding that slot machines being specifically named as gambling device in the statutes (Code of Iowa, 1935, §§ 13198, 13210, as amended by Acts 47th, Gen. As-

sem., c. 231, §§ 1, 2; § 13441-g21), when seized under valid search warrant, were subject to forfeiture unless the person claiming any interest in the device showed cause why they should not be so forfeited, and rejecting the contention that the record failed to:

"show that the devices in question had ever been used for gambling, were being used for gambling, or were intended to be so used, and that therefore they cannot be legally condemned,"

in State v. Doe, 227 Iowa 1215, 290 N. W. 518, the court said:

"The State insists also that the statute having declared punch boards and slot machines to be gambling devices, they are subject to forfeiture unless the person claiming an interest in said property appears and shows specific and legal cause why the same should not be forfeited under section 13441-g21 of the Code of 1935. Also, the return of the warrant described the property as 'gambling devices', which the State contends established a prima facie case as to the character of the machines; and the duty of proving that the slot machines and punchboards described in such warrant were not such as would come within the prohibition of the statute was upon the appellant. We are inclined to the view of the trial court which held that punch boards and slot machines being specifically named as gambling devices, when seized under valid search warrant, are subject to forfeiture unless the person named in the information or claiming an interest in the property shows cause why they should not be so forfeited. We believe that under the evidence the court was justified in holding that the machines in question were subject to forfeiture."

In Nelson v. State, 37 Okla. Cr. 90, 256 Pac. 939, it was held that in order to render a slot machine a gambling device it was not necessary that the money deposited may be lost and the court said:

"In order to gamble, it is not necessary that the player shall hazard what he play. It is equally gambling if

he may win by chance more than the value expended by him . State v. Smith, 2 Yerg. (10 Tenn.) 272, 281; State v. McTeer, 129 Tenn. 535, 167 S. W. 121."

The recent case of People v. Three Roulette Wheels, ————— Ill. App. —————, 60 N. E. 2d 248, (decided March 26, 1945) was a proceeding by the State's Attorney to secure the destruction of some roulette wheels, dice, poker tables, and poker chips, which had been seized by the Highway Police and were then in the custody of the sheriff of Cook County, Illinois. The petition for their destruction stated that these articles were "gambling equipment per se, upon the action of which money is staked, hazarded, bet, won or lost". No answer was filed to the petition. It was stipulated in the trial court:

"that at the time the police officers entered the premises there were about 125 people in the place and that no gambling was being carried on at that particular time; that stacked up, against the wall, in these premises were the following articles:"

then follows a description of the articles mentioned above and the stipulation continues:

"and at that particular time none of these articles were being used in the gambling, and that said articles were seized by the said officers."

The trial court denied the petition and ordered the articles returned to the asserted owner thereof. An appeal was taken from that order by the State's Attorney. Reversing the judgment below with directions to enter an order as prayed in the petition, this was said by the appellate court:

"The petition of the State's Attorney avers that these instruments are 'gambling equipment per se'. The owner does not deny this to be true. The fact that they were not being used for the purpose of gambling at the time seized would not be controlling. Bobel v. People, 173 Ill. 19, 20, 50 N. E. 322, 64 Am. St. Rep. 64; Frost v. People, 193 Ill. 635-640, 61 N. E. 1054, 86

Am. St. Rep. 352. That roulette wheels are gambling devices we need only to compare Webster's Unabridged Dictionary, 2nd Ed., p. 2174, with the statute. In view of the law which makes the possession of a gambling device criminal and makes it the duty of the public officials of a community to destroy it, it is difficult to imagine on what theory a judge of the Criminal Court woud enter an order requiring the Sheriff to turn over such a device as a roulette wheel to a party from whom it was taken."

A statute of the State of Kentucky (Ky. Stats., § 1962) provided that:

"And though no person be convicted as the setterup or keeper of such table or game, machine, bank or contrivance, yet if a jury shall, in summary proceedings, find that the money table, bank, machine or contrivance, or other things, were used *or intended to be used* for the purpose of such gaming, they shall be so condemned and forfeited." (Italics supplied by the court). Where crap tables were seized on a truck enroute out of the State of Kentucky to the State of Indiana, and their confiscation was ordered, it was contended by the owner thereof through a petition in intervention that the tables were dissembled, not set up or being used for gambling purposes nor intended to be used in Kentucky. The circuit court rejected this contention and sustained a judgment of the county court ordering such confiscation. Affirming this judgment the court of last resort in the state, in Hickerson v. Commonwealth, 283 Ky. 81, 140 S. W. 2d 841, said:

"It is sufficient if such property be found within the jurisdiction of the officers and intended to be used for gaming purposes at any place."

In Clark v. Holden, Chief of Police, 191 Miss. 7, 2 So. 2d 570, it appeared that the possession of slot machines which would "deliver to the operator thereof anything of value in varying quantities, in addition to the merchandise received," (Laws of Mississippi, 1938,

c. 353) was prohibited. The scope of the decision in that case is indicated by the following language used by the court:

"It is next urged by the appellant that since the agreed statement of facts discloses that the slot machines and pay-off tables in question were contained in their original crates as shipped from the factory, and that he, as plaintiff in the court below, offered to testify that he had not operated any of them, and that they were intended for sale in the state of Louisiana, where their possession, ownership and operation is lawful, they could not be seized and destroyed under the provisions of said chapter 353, Laws 1938. * * * We think it is clear that for the purpose of preventing the use of a device for gambling the Legislature may prohibit its possession or ownership, when it is designed for that purpose. The statute does not make its intended use for gambling a prerequisite."

Accordingly, the suit in replevin by one claiming to be the owner of the machines was held not maintainable.

See also: Com. v. Smith, 29 D. & C. (Pa.) 368; Enloe v. Lawson, 146 Ore. 621, 31 Pac. 2d 171; Mackay v. State, 65 Okla. Cr. 149, 83 Pac. 2d 611; People v. Gravenhorst, 32 N. Y. S. 2d 760; People v. Kay, 38 C. A. 2d 759, 102 Pac. 2d 1110.

Under the principles announced by the foregoing authorities and a proper interpretation of § 32-525, supra, the order appealed from was correct. The petition in intervention does not deny that the slot machines in question were gambling devices or that they were not paraphernalia "adapted, devised or designed" for carrying on a game of chance prohibited by the laws of this state or plead any facts from which it could be deduced that the machines were simply innocent playthings. It merely alleges that at the time they were seized they were "not at said time being used for the purpose of playing or carrying on any game of

chance". The district court could very well have sustained the demurrer interposed by the Assistant County and Prosecuting Attorney as well as his objection to the introduction of any evidence in support of said petition because that pleading entirely failed to show that the intervener was entitled to the relief he sought. § 32-525, supra, supplies not the slightest suggestion that the gambling device or paraphernalia as described therein must be used for the purpose of gambling before it can be destroyed. When it appears that any articles are "gambling devices" per se or are paraphernalia such as is described in the statute they are a nuisance and can be seized and destroyed as such. In view of the sworn complaint for the search warrant, the petition of the county attorney for the destruction of the machines pursuant to Wyoming law, it devolved upon intervener by his pleading to show that the machines were not of the character denounced by the statute.

Although, as stated above, the court could have properly disposed of this matter upon the pleadings alone, nevertheless, ample opportunity was afforded intervener to show, if he could, by evidence that the machines were not gambling devices or paraphernalia such as the statute describes. This he did not do. The burden was upon him to make this showing. The court had before it, as we have said, the sworn complaint of a number of persons asserting that these machines were gambling devices and paraphernalia of the sort that the statute designates as a nuisance. In addition the intervener himself testified, as set forth above, that by placing a coin, i. e., money, in the machines one stood "a chance" of receiving "more than he puts in," and that all these machines were the same. Both the authorities reviewed above and the statute involved, alike, make it clear, in our judgment, that these machines under the proofs in this record were a nuisance

and could therefore, pursuant to that statute, be seized and destroyed.

The order of the district court of Natrona County will be accordingly affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.