37 GAMBLING DEVICES (CHEYENNE ELKS CLUB AND CHEYENNE MUSIC AND VENDING, INC.), Appellants (Defendants),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 83–199.

Supreme Court of Wyoming.

Jan. 30, 1985.

Rehearing Denied March 4, 1985.

Douglas J. Moench, Jr., Cole & Moench, Cheyenne, for appellants.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Mary B. Guthrie, Senior Asst. Atty. Gen., and John W. Renneisen, Senior Asst. Atty. Gen., for appellee.

Before THOMAS, C.J.*, ROSE, BROWN and CARDINE, JJ., and RAPER, J., Retired.**

THOMAS, Chief Justice.

The key issue which we address in this case is a claim of exemption from the Wyoming statutes prohibiting gambling, which is premised on the ground that the accused activities consisted of "raffles or bingo conducted by charitable or nonprofit organizations." The appellants also argue at length a claim that the trial court erred in refusing to take judicial notice of the claimed fact that the Elk's Lodge is a nonprofit

---

* Became Chief Justice January 1, 1985.

** ROONEY, C.J. at the time of oral argument, having recused himself, RAPER, J., Retired, was

assigned pursuant to order of the court entered June 13, 1983.

organization. The district court ruled that certain accused machines, devices and paraphernalia were either gambling devices per se or used for gambling, and it ordered their destruction. The district court refused to take judicial notice of the status of the Elk's Lodge as a nonprofit organization. As we analyze the ruling of the district court, even if the status of the Elk's Lodge as a nonprofit organization were established, the judge still did not perceive the machines, devices and paraphernalia as "raffles or bingo." We find no error in the rulings of the district court, and its judgment is affirmed.

"* * * In clear violation of Rule 5.01(2), W.R.A.P., appellants have failed to provide '[a] statement of the issues presented for review." * * *." *Cline v. Safeco Insurance Companies*, Wyo., 614 P.2d 1335, 1337 (1980).

As we noted in *Cline v. Safeco Insurance Companies*, supra, Rule 1.02, W.R.A.P., would justify our refusing to consider the contentions of the appellants. Because the apparent issues are of some import in Wyoming, and because we believe we have accurately gleaned the contentions of the appellants from their brief, we shall consider the issues as we have identified them with some support from the brief of the State of Wyoming. We reiterate to the Bar, however, the concerns expressed in *Cline v. Safeco Insurance Companies*, supra, and post a firm admonition that we will not always tolerate such glaring failures to comply with the Rules of Appellate Procedure.

There is included in the Brief of Appellants a summary of the argument which does furnish some guidance as to the apparent issues addressed by the brief. That summary is:

"I. AN ARBITRARY DECISION BASED UPON THE TAKING OF JUDICIAL NOTICE OF CHARITABLE, NON–PROFIT STATUS AS TO ONE POSSESSOR OF DEFENDANTS, AND NOT TAKING SUCH NOTICE AS TO ANOTHER IS CAPRICIOUS AND ERRONEOUS IN LAW.

"II. AN ABUSE OF DISCRETION OCCURS WHERE AB INITIO, THE TRIAL COURT FAILS TO TAKE JUDICIAL NOTICE OF A FACT COMMONLY KNOWN WITHIN THE TERRITORIAL JURISDICTION OF THE TRIAL COURT, IS NOT SUBJECT TO REASONABLE DISPUTE, AND IS CAPABLE OF ACCURATE AND READY DETERMINATION. PROTECTION OF THE OPPOSING PARTY CAN BE IMPLEMENTED BY PROVIDING AN OPPORTUNITY TO BE HEARD.

"III. JUDICIAL NOTICE MAY BE TAKEN AT ANY STAGE OF A PROCEEDING AND IS MANDATORY WHEN A REQUEST IS ACCOMPANIED WITH CORRESPONDING INFORMATION. AT THE APPELLATE LEVEL, SUCH ACTION IS PROPER WHERE PLAIN ERROR APPEARS AT THE TRIAL LEVEL.

"IV. JUDICIAL NOTICE OF A EVIDENTIARY, ADJUDICATIVE FACT ESTABLISHES THAT FACT AND LEADS TO A QUALIFICATION OF THE PARTY AS EXCEPTED FROM THE PROHIBITION CONTAINED IN A STATUTE. SUCH EXCEPTIONS SHOULD BE CONSISTENTLY APPLIED.

"V. THE CONSTITUTIONAL GUARANTEE OF EQUAL PROTECTION UNDER THE LAW AND OF DUE PROCESS DOES NOT TOLERATE A STATUTE THAT FORBIDS ACTS IN TERMS SO VAGUE THAT MEN OF COMMON INTELLIGENCE MUST NECESSARILY GUESS AT ITS MEANING AND DIFFER AS TO ITS APPLICATION."

In the brief filed on behalf of the State of Wyoming the following issues are suggested:

"I. SHOULD THE DEVICES WHICH WERE SEIZED BE ORDERED DESTROYED PURSUANT TO SECTION 6–9–108, W.S. 1977?

"II. WAS IT ERROR FOR THE TRIAL COURT TO REFUSE TO TAKE JUDICIAL NOTICE THAT ELKS LODGE NUMBER 660 OF CHEYENNE, WYO-

MING WAS A NONPROFIT ORGANI-ZATION?

"III. IS SECTION 6–9–111, W.S. 1977, WHICH PROVIDES AN EXEMPTION FROM THE GENERAL PROSCRIP-TION AGAINST GAMBLING BY AL-LOWING CHARITABLE OR NON-PROFIT ORGANIZATIONS TO CON-DUCT RAFFLES OR BINGO, APPLI-CABLE?

"IV. SHOULD THIS COURT CON-SIDER APPELLANT'S ARGUMENT CONCERNING CONSTITUTIONALITY OF A WYOMING STATUTE, WHEN THE ARGUMENT IS INCOMPLETE AND CONFUSING?"

On June 24, 1983, officers of the Cheyenne Police Department seized certain machines, devices and paraphernalia which allegedly violated Wyoming Statutes prohibiting gambling[1] from premises owned and occupied by Elk's Lodge Number 660. The things that were seized included two electronic machines identified as Shawnee games, an electronic bingo game, four blackjack tables, a blackjack table top, three craps tables, eight stamp-vending machines which had been modified to sell "pickle cards," a pickle jar with numbers inside, poker chips, cards, and other items including some cash. A warrant had been issued pursuant to § 6–9–108, W.S.1977,[2] and after the seizure the district attorney filed a Petition for Determination As to Gambling Devices and Their Destruction in accordance with the same statute. The matter was set for hearing on June 24, 1983, and on the date set for hearing the Elk's Lodge filed a Resistance to Motion to Return Property, which essentially attacked the search warrant as unconstitutional, the statute as unconstitutional, and asserted that the seized items were not designed or adapted for gambling. Following a two-day hearing the State moved for a directed verdict on its petition on the ground that the Elk's Lodge had not established that it was a charitable or nonprofit organization. At this juncture the following colloquy occurred between the district court and counsel for the Elk's Lodge:

"[COUNSEL]: Your Honor, I would just say that it is well known and it has been established throughout that Elk's Lodges in the United States cannot be Elk's Lodges if they are profit making.

"THE COURT: I don't know that it's an item that I can necessarily take Judicial knowledge of."

The record discloses no other argument or motion to take judicial notice in the court below.

Following the hearing counsel submitted briefs on the issue of constitutionality of § 6–9–108, W.S.1977, and the district court entered its decision letter on July 26, 1983. The district court found that a number of the items seized were gambling devices which were prohibited by the laws of Wyoming and were subject to forfeiture and destruction as nuisances. Some of the seized items the district court held had not been shown by the evidence at the hearing to have been used in connection with gambling, and they were not ordered destroyed. Three craps tables and one blackjack table, which apparently were owned by the Cystic

---

1. Sections 6–9–101 to 6–9–113, W.S.1977, in effect at the time of the present proceedings, have been replaced by §§ 6–7–101 to 6–7–103, W.S. 1977 (June 1983 Repl.).

2. Section 6–9–108, W.S.1977, provided:

"Any gambling table, gambling device, or paraphernalia adopted [adapted], devised, or designed for the purpose of playing, conducting, or carrying on, any game of chance, prohibited by the laws of this state, is hereby declared to be a nuisance, and whenever a written complaint signed by the complainant under oath, alleging that he verily believes that any such gambling table, gambling device or paraphernalia is located at any place within this state, describing such gambling table, device or paraphernalia by name, and naming the place of its location, is presented to any district judge or justice of the peace, within whose jurisdiction the same is alleged to exist, it shall be his duty to forthwith issue his warrant, in the form prescribed by law for search warrants, directed to the sheriff or constable, commanding such officer to search for, seize, and bring before him such gambling table, device or gambling paraphernalia, and upon proof of its character, as such, thereupon to cause the same to be destroyed by burning or otherwise."

Fibrosis Foundation, were ordered set aside until that organization could be afforded an opportunity to be heard on the question of whether they should be destroyed.

The district court in addressing the question of the statutory exemption found in § 6–9–111, W.S.1977,[3] upon which the Elk's Lodge relied, stated:

"* * * As much as the Court might be inclined, it is unable in this instance to find any authority for taking judicial knowledge of the charitable or nonprofit status of the local Elks Club. A trustee, Mr. Barker, did testify at the hearing that the money derived from such machines generally went back to the club operation, but that if anything was left over, it would go to charity. The failure to establish the charitable or nonprofit character of the organization is fatal to any claim of exemption from the gambling laws of this state."

On August 1, 1983, a motion to intervene in the proceeding was filed on behalf of Cheyenne Music and Vending Company, Inc., which is the owner of the electronic machines. The district court held a hearing on that motion but entered its Order Denying Motion to Intervene on August 22, 1983. On that day the final written Order for Destruction of Gambling Devices was entered, which formalized the findings set forth in the court's decision letter. It is from that order that this appeal is taken. After the Notice of Appeal was filed the district court entered an appropriate Order for Stay of Execution on Order of Destruction pending the appeal.

As in the district court, the appellants vigorously argue the availability of the statutory exception found in § 6–9–111, W.S.1977:

"* * * But nothing in this section shall be construed as applying to games of chance known as raffles or bingo conducted by charitable or nonprofit organizations and the tickets of such raffles or bingo shall be sold only in this state."

The initial argument with respect to the availability of this exception focuses upon the claimed error on the part of the district court in refusing to take judicial notice of the nonprofit character of Elk's Lodge Number 660. This issue now is governed by Rule 201, W.R.E., which provides:

"(a) *Scope of rule.*—This rule governs only judicial notice of adjudicative facts.

"(b) *Kinds of facts.*—A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

"(c) *When discretionary.*—A court may take judicial notice, whether requested or not.

"(d) *When mandatory.*—A court shall take judicial notice if requested by a party and supplied with the necessary information.

"(e) *Opportunity to be heard.*—A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

---

3. Section 6–9–111, W.S.1977:

"If any person shall in this state open, set on foot, carry on, or promote, make or draw publicly or privately, any lottery, or scheme of chance, of any kind or description, by whatever name, style, or title the same may be known; or if any person shall by such ways and means, expose or set for sale any house, or houses, mine or mining property, lands or real estate, or any goods or chattels, cash or written or printed evidence of debt, or certificates of claims, or any thing or things of value

whatever, every person so offending shall be deemed guilty of a misdemeanor, and upon conviction, fined in any sum not exceeding one thousand dollars ($1,000.00), and be imprisoned in the county jail for a period not exceeding three (3) months. But nothing in this section shall be construed as applying to games of chance known as raffles or bingo conducted by charitable or nonprofit organizations and the tickets of such raffles or bingo shall be sold only in this state."

"(f) *Time of taking notice.*—Judicial notice may be taken at any stage of the proceeding.

"(g) *Instructing jury.*—In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed."

■ The appellants claim that the district court was supplied with the style of necessary information with respect to the nonprofit status of Elk's Lodge Number 660 which causes judicial notice to be mandatory under Rule 201(d), W.R.E. They point specifically to testimony from the secretary of the lodge that it had sought to ascertain whether the so-called "pickles game" was prohibited by the Wyoming Statutes. This testimony by the secretary of the lodge does not furnish the court with any information as to the nonprofit status of Elk's Lodge Number 660, and is not sufficient to meet the requirements of Rule 201(d), W.R.E.

■ The propriety of judicial notice is then vested in the sound discretion of the district court in accordance with Rule 201(c), W.R.E. *Blas v. Talabera,* 318 F.2d 617 (9th Cir.1963); *United States v. Garcia,* 672 F.2d 1349 (11th Cir.1982); *Herrera v. Nakata,* Colo.App., 478 P.2d 706 (1970); 1 Louisell and Mueller, Federal Evidence, § 58, p. 445 (1977); and 21 Wright and Graham, Federal Practice and Procedure, § 5107, p. 506 (1977). To obtain a reversal of such a ruling on appeal the appellant is required to demonstrate not only an abuse of discretion by the trial court but also that the error was prejudicial. *Blas v. Talabera,* supra; Rule 7.04, W.R.A.P. In this instance the appellants fail to demonstrate either an abuse of discretion or prejudice.

■ The appellants have persisted in their pursuit of judicial notice of the nonprofit status of Elk's Lodge Number 660 by supplying to this court an affidavit of the secretary of the lodge and a copy of its 1982 federal income tax return. We recognize that judicial notice may be taken at any stage of the proceedings, including the appeal. Rule 201(f), W.R.E.; *Kemlon Products & Development Company v. United States,* 646 F.2d 223 (5th Cir.1981), cert. denied 454 U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *United States v. Camp,* 723 F.2d 741 (9th Cir.1984); *Mills v. Denver Tramway Corporation,* 155 F.2d 808 (10th Cir.1946); *Prestige Homes, Inc. v. Legouffe,* Colo., 658 P.2d 850 (1983); *People ex rel. Adams v. Kite,* 48 Ill.App.3d 828, 6 Ill.Dec. 653, 363 N.E.2d 182 (1977); *Holguin v. Elephant Butte Irrigation District,* 91 N.M. 398, 575 P.2d 88 (1977); 1 Louisell and Mueller, Federal Evidence, § 59, p. 482 (1977); 1 Weinstein, Evidence, ¶ 28[06], p. 201–47 (1982); and 21 Wright and Graham, Federal Practice and Procedure, § 5110, p. 521 (1977). Judicial notice upon appeal should not, however, be invoked to relieve parties of their duty to present adequate evidence at the trial except in the most extreme cases in which the failure to take judicial notice would be akin to plain error. *Mills v. Denver Tramway,* supra; 1 Louisell and Mueller, supra, § 59, pp. 482–487; 1 Weinstein, supra, ¶ 201[04], pp. 201–38 and 201–39; and 21 Wright and Graham, supra, § 5110, pp. 524–527. See also Schwartz, A Suggestion for the Demise of Judicial Notice of Judicial Facts, 45 Tex.L.Rev. 1212 (1967). If Rule 201(d), W.R.E., is read literally it requires the taking of judicial notice upon appeal when the request is made and the necessary information is supplied. That construction of the rule would infringe upon basic principles which underly the appellate process and which require the timely presentation of objections and offers of proof to a trial court in order to preserve errors on rulings on evidentiary matters for review. These principles are summarized in Rule 103, W.R.E., which apply in the absence of plain error.[4] We will not adopt such an interpre-

---

4. Rule 103, W.R.E., provides:

"(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

tation. We construe our Rule 201(d) to require, in the absence of plain error, the taking of judicial notice on appeal only when timely request has been made to the trial court and the necessary information made a part of the record on appeal. See 1 Louisell and Mueller, supra, § 59, pp. 482–483; and 21 Wright and Miller, supra, § 5110, pp. 525–527. Judicial restraint requires that we reject the request to take judicial notice in this court in an instance such as this in which the critical evidentiary material upon which the request is based was not presented to the district court.

■ We need not pursue the possibility of taking judicial notice under the plain error doctrine because in this instance we can affirm the decision of the district court upon a different ground. The appellants argue that possession by a nonprofit organization of the items which were seized in this case is permissible pursuant to the exception found in § 6-9-111, W.S.1977:

> "* * * [N]othing in this section shall be construed as applying to games of chance known as *raffles or bingo* conducted by charitable or nonprofit organizations * * *." (Emphasis added.)

The appellants contend that some of the devices which were seized were used for "raffles or bingo" which may be conducted by nonprofit organizations within this exception. The trial court primarily relied upon the failure to establish the nonprofit status of the Elk's Lodge in its ruling that the statutory exception was not applicable. We, however, can affirm the decision of a trial court on any valid basis appearing in the record. *Valentine v. Ormsbee Explo-*

*ration Corporation,* Wyo., 665 P.2d 452 (1983); *Mentock v. Mentock,* Wyo., 638 P.2d 156 (1981); and *Budd v. Bishop,* Wyo., 543 P.2d 368 (1975).

■ With regard to the three electronic machines which were seized, it is clear from the record that these machines were being operated as gambling devices, although unlike the standard slot machines there was no automatic payoff. Instead those playing the machines were paid in cash by the bartender with the amount of payment depending upon their success in playing the games. See *State v. Branney,* 62 Wyo. 40, 160 P.2d 972 (1945). It also is established by evidence in the record that these machines were being operated for profit by Elk's Lodge Number 660, and the owner of the machines, Cheyenne Music and Vending Company, Inc. The net proceeds from the operation of the machines was divided between these two entities on a fifty-fifty basis. Cheyenne Music and Vending Company, Inc., concedes that it is organized and operated as a profit-making venture. That fact, as well as the failure of the proof relating to the nonprofit status of the Elk's Lodge, prevents any application of the statutory exception to these particular machines. As the Illinois Appellate Court has said:

> "The law is not required to be blind to, and ineffectual against, the ceaseless efforts and ingenuity of persons to circumvent the Gambling Device Act. When we ascend to the bench we do not discard the ordinary common sense observations, experiences and intelligence of common men and we cannot be so naive as to

"(1) *Objection.*—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

"(2) *Offer of Proof.*—In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

"(b) *Record of offer and ruling.*—The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objec-

tion made, and the ruling thereon. It may direct the making of an offer in question and answer form.

"(c) *Hearing of jury.*—In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

"(d) *Plain error.*—Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

conclude that the devices which have been demonstrated to us are games of amusement. * * * " *People v. One Machine Known as "Circus Days"*, 23 Ill. App.2d 480, 163 N.E.2d 223, 228 (1960).

The other items which it is argued are subject to the exception are the so-called "pickle cards." These cards were purchased by bar patrons of the Elk's Lodge. They have tabs which when pulled by the purchaser reveal symbols similar to those on slot machines, and these then are compared with those appearing on a chart to determine whether the player has won. The record establishes that pickle cards are sold under a number of different names, each constituting a separate game containing a specific number of tickets which are sold for a set amount with a predetermined amount of profit if all the tickets are sold. The odds of any ticket winning also are predetermined because only a set number of the tickets display the requisite combination of winning symbols. These cards function in a manner very similar to slot machines, which are prohibited specifically by § 6–9–101, W.S.1977. See *State v. Branney*, supra.

■ The appellants contend, however, that the pickle cards are "raffles" for purposes of applying the exception found in § 6–9–111, W.S.1977. On this issue we hold that these devices do not fall within the definition of raffles as that term was intended by our legislature. The language in the statute is to be examined in light of objects and purposes to be accomplished. *State v. Stovall*, Wyo., 648 P.2d 543 (1982); and *School Districts Nos. 2, 3, 6, 9, and 20, in County of Campbell v. Cook*, Wyo., 424 P.2d 751 (1967). In § 6–9–111, W.S.1977, the legislature manifests an unmistakable intention that lotteries of "any kind or description" are prohibited with the limited exception of "raffles or bingo conducted by charitable or nonprofit organizations." See also § 6–9–112 and § 6–9–113, W.S.1977. The words "lottery" and "raffle" are not defined in the statute, but from the manner in which these terms are used it is apparent that a raffle is considered a type of lottery.

A lottery has been defined as consisting of three elements, which are consideration, chance and prize. *Williams v. Weber Mesa Ditch Extension Company, Inc.*, Wyo., 572 P.2d 412 (1977); *Morrow v. State*, Alaska, 511 P.2d 127 (1973); *In re Interrogatories of the Governor Regarding Sweepstakes Races Act*, 196 Colo. 353, 585 P.2d 595 (1978); *State v. Nelson*, 210 Kan. 439, 502 P.2d 841 (1972); and *Albertson's, Inc. v. Hansen*, Utah, 600 P.2d 982 (1979). All these elements are present in the operation of a pickle game. *Contact, Inc. v. State*, 212 Neb. 584, 324 N.W.2d 804 (1982). In *Williams v. Weber Mesa Ditch Extension Company, Inc.*, supra, 572 P.2d at 414, citing *State v. Hudson*, 128 W.Va. 655, 37 S.E.2d 553, 163 A.L.R. 1265 (1946), this court, in a different context, indicated that a "raffle" is synonymous with a "lottery." The contention of the appellants is that it follows if the Elk's Lodge were a nonprofit organization a pickle game is exempt because it is a raffle.

■ A scrutiny of the actual language used in § 6–9–111, W.S.1977, however, convinces this court that in the prior decision we did not intend to justify a lottery as a raffle insofar as the statutory prohibition of games of chance is concerned. More properly analyzed, a raffle is a form of prohibited lottery in which each participant buys a ticket for valuable consideration in order to be eligible for a random drawing to win a prize or prizes. In considering what the legislature intended by using the term "raffle" we are reminded that words in statutes are to be given their common and ordinary meaning. *Herring v. Welltech, Inc.*, Wyo., 660 P.2d 361 (1983). The common and ordinary use of the term "raffle" would not include a game of chance such as the pickles game. Unlike the usual raffle conducted by a charitable or nonprofit organization, pickles cards are marked by symbols which when revealed and compared to a pre-existing chart determine whether the purchaser is a winner. In a raffle the probability of any individual ticket being randomly drawn to win a prize is equal and determined by the

total number of tickets actually sold, whereas in the pickles game a predetermined number of cards is to be sold with a predetermined number of winners.

We must assume that the legislature in structuring the exception contained in § 6-9-111, W.S.1977, carefully chose to except only "raffles or bingo" conducted by the eligible organizations, and not all lotteries or schemes of chance, "of any kind or description, by whatever name, style, or title the same may be known" which might be conducted by such organizations. We should not assume, in construing an exception to a criminal statute, that the legislature intended to describe other things than those specifically mentioned, in this instance all lotteries, by the words "raffles or bingo." We conclude that even should we judicially notice the nonprofit status of Elk's Lodge Number 660 its conduct of the pickles game does not fall within the statutory exception found in § 6-9-111, W.S. 1977.

The final argument presented in the appellants' brief is that the statute is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. It is urged that it denies equal protection and due process for these reasons with reliance placed upon *Sanchez v. State*, Wyo., 567 P.2d 270 (1977). We do follow the rule that criminal statutes must set forth with reasonable certainty the act or conduct required or forbidden in a manner that furnishes fair notice to a person of ordinary intelligence that certain conduct is proscribed by the State. *Armijo v. State*, Wyo., 678 P.2d 864 (1984). The appellants' brief fails to identify the particular statute which is claimed to be unconstitutional, and it does not inform this court except by inference of those constitutional provisions which purportedly are violated. We do not consider constitutional questions in the abstract. When a party fails to demonstrate the manner in which his own rights are adversely affected in light of the circumstances before the court we will not consider the constitutional claim. *Armijo v. State*, supra; *Alberts v.*

*State*, Wyo., 642 P.2d 447 (1982). The appellants have failed in this case to meet the requirements which justify the consideration of their constitutional claim.

The appellants also seem to argue that in some manner they were treated differently from the Cystic Fibrosis Foundation, which was identified as the owner of some of the items which were seized. The short answer to any claims such as this, which we assume invokes the requirement of equal protection of the laws, is that the record establishes only that a hearing was required with respect to the Cystic Fibrosis Foundation, and there is no way for us to determine from this record what the outcome of that hearing was. The appellants were not deprived of equal protection of the laws by the order of the district court affording due process to the Cystic Fibrosis Foundation.

The district court correctly refused to take judicial notice of the nonprofit status of Elk's Lodge Number 660, and we are not required to do so in this appeal. Even if the nonprofit status of Elk's Lodge Number 660 had been established, the items which were ordered destroyed offend against the statute proscribing gambling, and they could not be saved by the claimed exception found in § 6-9-111, W.S.1977. The appellants have failed to sustain their claim that they are denied their constitutional right of equal protection because of the vagueness of the statute. The Order for Destruction of Gambling Devices is proper and should be executed.

Affirmed.