STATE OF NORTH CAROLINA v. LEON McNAIR

No. 7713SC735

(Filed 2 May 1978)

1. **Burglary and Unlawful Breakings § 5.9— breaking and entering and larceny— recent possession of instrument used in crimes**

    The State's evidence was sufficient to support an inference that defendant was the person who committed a breaking and entering and larceny at a bowling alley where it tended to show that the unlawful entry was effected in the early morning hours by chopping a hole through a vent in the building; an ax suitable for accomplishing this was found beneath the hole immediately after the crimes were committed; and defendant had possession of that ax on the preceding day.

State v. McNair

2. **Jury § 7.10— juror kin to member of Public Safety Commission—motion for mistrial**

   The trial court did not err in the denial of defendant's motion for mistrial made on the ground that defense counsel had gotten no response when he asked all jurors if any of them "were related to or good friends with anyone involved in law enforcement" and defense counsel discovered during the trial that one juror was a brother of a member of the Columbus County Public Safety Commission, since a member of the Commission was not a law enforcement officer and was not involved in criminal investigations, but only had part-time administrative duties such as supervising and hiring for the Columbus County Police force and the county jail; no Columbus County police officers were involved in the investigation or prosecution of defendant's case; a juror's close relationship with a police officer, standing alone, is not grounds for a challenge for cause in any event; and there were, therefore, no grounds for a successful challenge for cause.

APPEAL by defendant from *Bailey, Judge*. Judgment entered 29 June 1977 in Superior Court, Columbus County. Heard in the Court of Appeals 16 January 1978.

This is a criminal prosecution for felonious breaking and entering and felonious larceny. The State presented evidence to show:

Early Saturday morning, 12 March 1977, while it was yet dark, the burglar alarm in a building housing a bowling alley in Whiteville went off. Officer McPherson of the Whiteville Police Department went to investigate. As he drove to the back of the building his car lights shone on a man up on a little scaffold beside the rear wall of the building. The man jumped off the scaffold and ran. Officer McPherson could see only that he was a black male of slender build, approximately five feet, ten inches in height, a description which fits the defendant. The officer saw no one else around. Further investigation disclosed that the scaffold was directly under an air exhaust vent. Aluminum louvers on the vent had been chopped or beaten loose, making a hole big enough to crawl through. Beneath the vent the officer found an ax which had a badly chipped handle. Inside the building the office door was open, the top desk drawer was open, and $12.00 was missing from the drawer.

Emma Bellamy, a witness for the State, identified the ax found beneath the broken vent as hers and testified she had loaned it to defendant on Friday, 11 March 1977, when defendant

came to her house saying he wanted to borrow the ax to cut wood. Defendant had promised he would return her ax either that night or in the morning, but he never returned it. Instead, Mrs. Bellamy found a red-handled ax on her porch a few days later. This was not the same ax she had loaned to the defendant, and she thought that defendant must have brought it in place of her ax.

Clarence Brown, a police detective, testified that defendant told him two conflicting stories regarding Mrs. Bellamy's ax. Defendant first told Brown that while he was cutting wood the day after borrowing the ax from Mrs. Bellamy, he broke the handle. He purchased a new handle to put in Mrs. Bellamy's ax head, and he put the repaired ax on Mrs. Bellamy's porch. The second story was that defendant loaned Mrs. Bellamy's ax to a white boy but did not know what the white boy did with the ax.

Defendant took the stand and denied he had committed the offenses for which he was charged. He admitted that he told Brown two stories about the ax. He testified that he told Brown the first story only because he was mad and shocked about being accused of the crimes. Defendant stated that he borrowed the ax from Mrs. Bellamy for a friend named Harry, who was a bushy-haired white male. He did not tell Mrs. Bellamy his real reason for borrowing her ax because he knew that she would not let anyone else use the ax. His friend did not show up to get the ax that day, so defendant left the ax on his back porch. When he woke up on the morning of 12 March, the ax was gone, so he bought a new handle and located an old ax head to put the handle in. He left the replacement ax at Mrs. Bellamy's house.

The jury found defendant guilty on both counts. From judgment imposing prison sentences, defendant appeals.

*Attorney General Edmisten by Associate Attorney Lucien Capone III for the State.*

*Marvin J. Tedder for defendant appellant.*

PARKER, Judge.

We find the evidence sufficient to warrant submission of the charges against defendant to the jury. Accordingly, we find no error in the denial of defendant's motion for directed verdict.

[1]　There was ample evidence that the offenses charged against defendant were committed by someone in the darkness of the early morning hours of 12 March 1977. There was evidence that the unlawful entry was effected at that time by chopping a hole through a vent in the rear wall of the building. An ax suitable for accomplishing this was found beneath the hole immediately after the crimes were committed. Defendant was shown to have had possession of that ax on the preceding day. In our opinion a reasonable inference is that defendant was the person who brought the ax to the building and there used it to effect the unlawful entry. The jury could also reasonably infer that he was the person who committed the larceny pursuant to that breaking and entering.

It has long been recognized that possession of stolen property soon after the theft warrants an inference that the possessor is the thief and, if there is sufficient evidence that the property was stolen pursuant to a breaking and entering, that the possessor is also guilty of the breaking and entering. *State v. Eppley*, 282 N.C. 249, 192 S.E. 2d 441 (1972); *State v. Blackmon*, 6 N.C. App. 66, 169 S.E. 2d 472 (1969). Inferences based on similar reasoning arise in the present case. Where, as here, the evidence shows (1) that a breaking and entering occurred; (2) that prior thereto the accused had possession of an instrument used to effect it; (3) that such possession occurred within a short time prior to the breaking and entering; (4) and that the instrument was found at the scene of the crime immediately after the crime was committed, a jury would be justified in finding that the instrument had been brought there by the person who had been shown to have previously possessed it and that such person used it to effect the breaking and entering. If the evidence is also sufficient to show that the crime of larceny was committed pursuant to the breaking and entering, then the jury may infer that the accused is guilty of larceny as well as breaking and entering.

[2]　Defendant's remaining assignment of error is directed to the trial judge's denial of his motion for a mistrial made just after the jury retired to consider its verdict. The basis for defendant's motion arose out of the voir dire of prospective jurors. In his motion, defendant's attorney stated to the court that he "asked all the jurors if any of them were related to or good friends with anyone connected with or involved in law enforcement work." None of

the jurors responded at that time, but defense counsel later discovered "that one of the jurors is in fact a brother to a Police Commissioner of the Columbus County Police Department." In denying defendant's motion, the trial judge observed that the question asked of the prospective juror was "whether he was related to or a good friend of anyone involved in law enforcement."

In recalling the question asked of the prospective jurors, the defense attorney and the trial judge stated the question somewhat differently. Although the trial judge made no findings of fact denominated as such regarding the precise wording of the question, we are nevertheless bound by his statement of the facts, *i.e.*, "that the question asked was whether he [the prospective juror] was related to or a good friend of anyone involved in law enforcement."

Even if the juror's relation to "a Police Commissioner" had been disclosed on voir dire, we note that the mere existence of that relation did not disqualify the juror nor did it constitute grounds for a successful challenge for cause. "[A] juror's close relationship with a police officer, standing alone, is not grounds for a challenge for cause." *State v. Lee*, 292 N.C. 617, 625, 234 S.E. 2d 574, 579 (1977). Moreover, the juror's brother was not a police officer, as that term is generally understood. Described by defense counsel as "a Police Commissioner of the Columbus County Police Department," the position of the juror's brother is more accurately described as a member of the Columbus County Public Safety Commission. Membership on that commission is a part-time job, the commission being required only to meet once each month. A member of the commission is not a law enforcement officer and is not involved in criminal investigations. The position is administrative with such duties as supervising and hiring for the Columbus County Police Force and the county jail. 1973 N.C. Sess. Laws Ch. 101, *as amended*, 1973 N.C. Sess. Laws Ch. 311, and 1975 N.C. Sess. Laws Ch. 460. No Columbus County police officers were involved in the investigation or prosecution of the present case. Thus, the record reveals no grounds for a successful challenge for cause.

Defendant argues that had he known of the juror's affiliation with a member of the Public Safety Commission, he would have

exercised a peremptory challenge to remove the juror "on the basis that said affiliation or association may cause biased or subjective feelings," but that he was prevented from exercising such a challenge by the juror's failure to reveal the relationship. Even so, a decision as to a juror's competency, both at the time of selection and subsequently during the trial, rests in the trial judge's sound discretion and is not reviewable upon appeal absent a showing of abuse of discretion. *State v. Waddell*, 289 N.C. 19, 220 S.E. 2d 293 (1975), *death penalty vacated*, 428 U.S. 904, 96 S.Ct. 3211, 49 L.Ed. 2d 1210 (1976); *State v. Buffkin*, 209 N.C. 117, 183 S.E. 543 (1936); *State v. Gibbs*, 5 N.C. App. 457, 168 S.E. 2d 507 (1969); *State v. Blount*, 4 N.C. App. 561, 167 S.E. 2d 444 (1969). In the present case no abuse of discretion has been shown. In that connection, we note that there was no evidence that the juror deliberately misrepresented his relationship. In view of the purely administrative nature of the duties of members of the Columbus County Public Safety Commission, it would have been reasonable for the juror to conclude that his brother lacked the direct involvement in law enforcement which defense counsel sought to discover. In addition, the trial judge questioned the jurors regarding possible bias, and "[n]one of the jurors indicated that they would be influenced by anything other than evidence in the case." No abuse of discretion having been shown, defendant's assignment of error directed to the trial court's denial of his motion for mistrial is overruled.

　　In defendant's trial and in the judgment appealed from we find

　　No error.

　　Judges MARTIN and ARNOLD concur.