Louise HURST, Executrix of the Estate of Ivan Barnett, Deceased, and Executrix of the Estate of Marie Barnett, Deceased; and as Administratrix of the Estate of Cliff Barnett, Deceased, Appellant (Plaintiff),

v.

The STATE of Wyoming; the State Board of Parole of Wyoming; John Lang, Chief Parole Officer; and unknown parole officers and employees of the State Board of Parole of Wyoming, Appellees (Defendants).

No. 84–159.

Supreme Court of Wyoming.

April 9, 1985.

Bert T. Ahlstrom, Jr., Cheyenne, for appellant (plaintiff).

Bruce A. Salzburg, Freudenthal Law Offices, P.C., Cheyenne, for appellees (defendants).

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

This is an appeal from a summary judgment granted in a case sounding in negligence. We affirm.

Appellant raises the following issue:

"Whether the district court judge erred in granting the defendants' Motion for Summary Judgment under the facts and circumstances of this case."

Robert Dale Henderson, a convicted felon, was granted parole by the Wyoming State Board of Parole on July 31, 1981. His parole was to end on February 25, 1982. After his marriage to Donna Barnett Holcomb, he was, in December 1981, granted permission to leave the state of Wyoming. It was disputed whether his trip to Ohio was a permanent move with permission and instructions to mail in his final two monthly reports to his probation officer or whether he left on a ten-day travel permit which would have expired

December 10, 1981. Regardless, he moved to Adams County, Ohio where, on January 21, 1982, he murdered Marie, Ivan, and Cliff Barnett, the mother, father and brother of his new wife. He pled guilty to the aggravated murder of these three people on August 5, 1983. He also admitted to committing a total of nine other murders in several states between January 21 and February 5, 1982. Appellant filed suit against the state of Wyoming and various state board of parole employees alleging that:

" * * * [T]he Defendants are liable for damages to the Plaintiff for the tortious conduct of the Defendant and Defendant's employees while in the scope of their employment, said negligent conduct being as follows:

"A. In authorizing and permitting Robert Dale Henderson to leave the State of Wyoming and travel to Ohio without obtaining the prior permission of the State of Ohio, pursuant to Section 7–13–401, et seq. of the Wyoming Statutes, 1977, and in violation of the Interstate Compact for Supervision of Parolees and Probationers as ratified by Chapter 34, Session Laws of Wyoming, 1939, Section 11–411, Wyoming Compiled Statutes, 1945.

"B. In failing to notify or contact officials in the State of Ohio and in particular, Adams County, Ohio, when the said Robert Dale Henderson failed to return to the State of Wyoming on December 10, 1981, pursuant to the authorization given to him by his Parole Officer."

Both sides submitted affidavits in support of their position; these affidavits referred to reports and other documents which were not attached nor submitted to the court.[1] The district court granted summary judgment for the defendants, holding that although neither the claim of judicial immunity nor sovereign immunity barred appellant's claim, nevertheless, summary judgment should be granted the State on the theory that the acts of the State and its employees were a remote and not the proximate cause of the murders as a matter of law.

 Summary judgment is only appropriate upon a dual finding that there is not a genuine issue as to a material fact and that the prevailing party, as a matter of law, is entitled to judgment. *Seamster v. Rumph*, Wyo., 698 P.2d 103 (1985).

 If a judgment is sustainable on any legal ground appearing in the record, it must be sustained. *37 Gambling Devices (Cheyenne Elks Club and Cheyenne Music and Vending, Inc.) v. State*, Wyo., 694 P.2d 711 (1985); *Valentine v. Ormsbee Exploration Corp.*, Wyo., 665 P.2d 452 (1983); *Agar v. Kysar*, Wyo., 628 P.2d 1350 (1981). We, therefore, affirm the grant of summary judgment in this case, not upon the grounds stated by the trial court, but because governmental immunity is a bar to appellant's cause of action or claim.

Governmental immunity has long been accorded agencies granting parole, releasing prisoners or supervising them on parole, we suspect out of necessity more than any other reason. The numbers of prisoners these agencies must move through the prison system to parole or release is substantial. And, in the vast majority of cases, we know there will always come a time when prisoners have served their sentences and must be released. To place liability upon an agency charged with this duty has long been held unacceptable, it being said that:

"Governmental immunity from liability for injuries caused by negligently released individuals has been based on state constitutions and the Eleventh Amendment to the United States Constitution, on state statutes providing for immunity in connection with the release of a prisoner * * * and on the common-law doctrine of sovereign immunity." (Footnotes omitted.) Anno., Governmen-

---

**1.** Rule 56(e), W.R.C.P., requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Both parties violated this provision. Due to our disposition of the case, however, these inadequacies are not relevant.

tal Tort Liability for Injuries Caused by Negligently Released Individual, 6 A.L. R.4th 1155, 1159 (1981).

This court was asked to abolish the doctrine of governmental immunity still available to the state of Wyoming in *Worthington v. State*, Wyo., 598 P.2d 796 (1979). The court made one of its latest pronouncements concerning the substantial policy reasons for leaving the matter to the legislature when it stated:

"* * * [T]his matter can be far better handled by a legislature to carve out and classify those areas in which the doctrine of immunity shall be abolished and those areas in which it should be retained. If this is not left in the hands of the legislature, this court would be forced to settle the possible areas in which the doctrine should not apply on a case-by-case basis with unnecessary confusion and expense to claimants and to the State." At p. 805.

About the time of publication of the Worthington opinion, the Wyoming legislature had determined those areas in which governmental immunity should be abolished by the adoption of the Wyoming Governmental Claims Act, § 1–39–101, et seq., W.S.1977, Cum.Supp.1984. The Wyoming Governmental Claims Act reaffirmed and retained immunity from claims in tort against governmental entities and their employees. Unless that immunity was expressly waived[2], immunity was to be the rule; liability was to be the exception and then only when expressly provided for within the Wyoming Governmental Claims Act.

In this case, the parole board granted parole to Henderson. While free on parole, and two months before his total release, he was granted permission by his parole officer to leave the state of Wyoming. Suit against the parole board and the parole officers was based upon granting permission to leave the state of Wyoming and

failing to notify the authorities in Ohio. Such suit is barred by the doctrine of governmental immunity unless that immunity is waived by the Wyoming Governmental Claims Act, § 1–39–101, et seq., supra. We have searched the act and found one statute that might be claimed to grant an exception to that immunity. That statute, § 1–39–112, W.S.1977, Cum.Supp.1984, provides:

"A governmental entity is liable for damages resulting from tortious conduct of law enforcement officers while acting within the scope of their duties."

With respect to the effect of § 1–39–112, supra, upon the doctrine of governmental immunity, it was stated:

"This section exposes the governmental entity to broader liability than the other exceptions. The section permits the government to be liable for assault, battery, false arrest, malicious prosecution, abuse of process, libel, slander, defamation and perhaps deprivation of civil rights, to name a few. While such broad liability is probably desirable in order to adequately protect the public against police tyranny, the statute has some troubling aspects. Note the term 'law enforcement officer' is undefined." Comments, Wyoming's Governmental Claims Act: Sovereign Immunity With Exceptions—A Statutory Analysis, XV Land and Water L.Rev. 619, 629 (1980).

The question here to be resolved is whether the members of the parole board and the parole officers, at the time of this incident and with respect to the activities complained of, were "law enforcement officers" within the meaning of § 1–39–112, supra.

 If possible, words contained in a statute must be given their plain and ordinary meaning. *State Board of Equalization v. Tenneco Oil Company*, Wyo., 694 P.2d 97 (1985). The fundamental rule of statutory construction is to determine legis-

---

**2.** Section 1–39–104, W.S.1977, Cum.Supp.1984, provides in pertinent part:

"A governmental entity and its public employees while acting within the scope of duties are

granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112."

lative intent. *State Board of Equalization v. Tenneco Oil Company*, supra; *State v. Stovall*, Wyo., 648 P.2d 543 (1982). A statute must be viewed in terms of its objective and purpose. *Wyoming State Treasurer v. City of Casper*, Wyo., 551 P.2d 687 (1976). Although this act should be liberally construed,

" * * * a liberal construction does not require that words be accorded a forced, strained, or unnatural meaning, or warrant an extension of the statute to the suppression of supposed evils or the effectuation of conjectural objects and purposes not referred to, nor indicated in any of the terms used." Crawford, Construction of Statutes § 238 at 451–452 (1940).

The legislature did not define law enforcement officer. Black's Law Dictionary (5th ed. 1979) defines law enforcement officer as: "Those whose duty it is to preserve the peace." Peace officer is variously defined

" * * * by statute in the different states; but generally it includes sheriffs and their deputies, constables, marshals, members of the police force of cities, and other officers whose duty is to enforce and preserve the public peace. In general, any person who has been given general authority to make arrests. Generally a 'peace officer' is a person designated by public authority to keep the peace and arrest persons guilty or suspected of crime and he is a conservator of the peace, which term is synonymous with the term 'peace officer'." Black's Law Dictionary, supra. See also, *Busbee v. Reserve Insurance Company*, 147 Ga. App. 451, 249 S.E.2d 279 (1978).

The legislature has defined peace officer in § 7–2–101, W.S.1977, Cum.Supp.1984:

"As used in W.S. 7–2–101 through 7–2–103 'peace officer' means any duly authorized member of a sheriff's office, municipal police force, college or university campus police force, the Wyoming highway patrol, game and fish law enforcement personnel qualified pursuant to W.S. 9–3–1901 through 9–3–1906 [§§ 9–1–701 through 9–1–706] and when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony, during the performance of their statutory duties, or while responding to requests to assist other peace officers performing their official duties, and special agents of the state of Wyoming charged with the enforcement of criminal statutes and ordinances."

Parole officers are not included in this definition nor within a later enactment.[3]

Section 9–3–1901(iv), W.S.1977, defines a law enforcement unit as:

" 'Law enforcement unit' means any public agency having general police power and charged with making arrests in connection with enforcement of the criminal statutes and ordinances of this state or any county or city thereof."

---

**3.** Subsequent to this incident, the legislature again defined "peace officer" in § 6–1–104(a)(vi), W.S.1977, as including the following officers:

"(vi) 'Peace officer' includes the following officers assigned to duty in the state of Wyoming:

"(A) Any duly authorized sheriff, under sheriff or deputy sheriff;

"(B) Any duly authorized member of a municipal police force, a college or university campus police force or the Wyoming highway patrol;

"(C) Game and fish law enforcement personnel qualified pursuant to W.S. 7–2–101 and when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony, during the performance of their statutory duties, or while responding to requests to assist other peace officers performing their official duties;

"(D) Agents of the division of criminal investigation appointed pursuant to W.S. 9–2–536 [§ 9–1–613];

"(E) Any duly authorized arson investigator employed by the state fire marshal;

"(F) Inspectors of the Wyoming livestock board authorized under W.S. 11–20–201 who have qualified pursuant to W.S. 9–1–701 through 9–1–707 when enforcing W.S. 11–19–101 through 11–24–115 and 11–29–101 through 11–30–113 and any laws prohibiting theft or mutilation of livestock or any part thereof; and

"(G) Federal law enforcement agents."

Again, parole officers are not included.

**1134**

Parole officers are granted authority to make arrests in the execution of their duties pursuant to § 7–13–408, W.S.1977. They are not given other authority traditionally associated with peace officers.

While authority from other states defining the groups considered to be law enforcement officers is not controlling, yet these cases are helpful in summarizing (1) whether the particular activity complained of was within a traditional definition of law enforcement officer, and (2) whether the classification was appropriate for the particular facts of this case and within the intent of the legislature in adopting § 1–39–112, W.S.1977, supra. Thus, a campus policeman was held to fit within a statute defining law enforcement officers and could arrest for possession of marijuana. *GLN v. State*, Fla.App., 432 So.2d 623 (1983). An airport security officer was held to the standards of a law enforcement officer in performing his duties for purposes of search and seizure. *Bell v. State*, Alaska, 519 P.2d 804 (1974). A deputy United States marshal was considered a law enforcement officer for purposes of the Federal Tort Claims Act. *Lucas v. United States*, 443 F.Supp. 539 (D.C.Cir. 1977). A police officer, working as a store security guard was considered a law enforcement officer for purposes of a statute proscribing aggravated battery against law enforcement officers. *State v. Coleman*, 224 Kan. 447, 580 P.2d 1329 (1978).

A parole officer, however, was not considered a law enforcement officer within the spirit or the meaning of *Miranda* in *State v. Johnson*, 87 S.D. 43, 202 N.W.2d 132 (1972). And, a member of the public safety commission was not a law enforcement officer because his job did not involve criminal investigation but was primarily administrative. *State v. McNair*, 36 N.C. App. 196, 243 S.E.2d 805 (1978). A school teacher was not considered a law enforcement officer for purposes of federal constitutional limitations on search and seizure. *DRC v. State*, Alaska App., 646 P.2d 252 (1982). A director of corrections was not a law enforcement officer for purposes of a venue statute. *Busbee v. Reserve Insur-*

*ance Co.*, supra (reversed on other grounds). The cases seem to say that traditional police activities carried on by law enforcement officers involve the power of arrest, keeping the peace, and enforcement of criminal law among all of society.

Looking at the mischief that the statute was designed to cure, the legislature must have intended that this statute create an exception from immunity only for activities which come within the province of traditional law enforcement. Police officers have tremendous power and authority to interfere with the rights of citizens. The logical inference is that the legislature intended this abrogation of the common-law immunity as a safeguard against misuse of this power by providing citizens a broad remedy for any tortious conduct causing damage.

We hold, therefore, that this particular cause of action cannot be maintained because it does not fall within an exception provided by the Wyoming Governmental Claims Act. The primary duties of the parole board or parole officer are confined to a small group of persons after arrest, conviction and often incarceration. They ordinarily are not involved in keeping the peace as that term is generally understood. The parole board and the parole officers are not law enforcement officers under the facts of this case and are not subject to claim or liability because of governmental immunity. The decision granting summary judgment to the State is, therefore, affirmed.