2008 WY 19

STATE of Wyoming DEPARTMENT OF CORRECTIONS, Wyoming State Penitentiary, Wyoming Honor Farm, Petitioners,

v.

Leonard (Lee) WATTS, Personal Representative of The Estate of Tammy Sue Watts, Respondent.

The State of Wyoming Department of Corrections, Wyoming State Penitentiary, Wyoming Honor Farm, Appellants (Defendants),

v.

Leonard (Lee) Watts, Personal Representative of the Estate of Tammy Sue Watts, Appellee (Plaintiff).

Nos. S–07–0050, S–07–0095.

Supreme Court of Wyoming.

Feb. 22, 2008.

Representing Petitioners/Appellants: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Misha Westby, Senior Assistant Attorney General; C. Levi Martin, Senior Assistant Attorney General. Argument by Ms. Westby.

Representing Respondent/Appellee: David B. Hooper and Tom A. Glassberg of Hooper Law Offices, P.C., Riverton, Wyoming. Argument by Mr. Hooper.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Leonard (Lee) Watts brought a wrongful death suit after his wife, Tammy Sue Watts, who was a contract nurse at the Wyoming Honor Farm, was murdered by an inmate. The Wyoming Department of Corrections, Wyoming State Penitentiary and Wyoming Honor Farm (hereinafter collectively referred to as "the State") moved for summary judgment, claiming they were immune from suit pursuant to the Wyoming Governmental Claims Act (WGCA). The district court denied their motion. In this combined appeal and writ of review, the State contests the district court's ruling. We conclude that Mr. Watts' claims are barred under the WGCA. Consequently, we reverse.

## ISSUES

[¶ 2] The State phrases the issue as:

Do Appellee's claims fall within the "operation or maintenance of any building" exception to governmental immunity under Wyo. Stat. Ann. § 1–39–106 (LexisNexis 2003)?

Mr. Watts states the following appellate issues:

1. Does the Court have jurisdiction to review the District Court's Order Denying the State's Motion for Summary Judgment?

2. Was the death of Tammy Watts a direct result of the manner in which the State of Wyoming operated the Honor Farm Administration Building thus permitting a claim to be made for wrongful death "caused by the negligence of public employees ... in the operation or maintenance of any building ..." Wyo. Stat. Ann. § 1–39–106 (LexisNexis 2003)?

## FACTS

[¶ 3] Ms. Watts was a contract nurse who worked at the Wyoming Honor Farm. She usually arrived for work around 6:00 a.m. each day. Ms. Watts was typically alone in the medical offices until the other nurse arrived between 6:30 and 7:00 a.m. The medical offices were located in the basement of the administration building, and inmates could access them from the east door without being observed. Sometime before 7:00 a.m. on April 15, 2004, Floyd Grady, an inmate at the Honor Farm, murdered Ms. Watts in the medical offices.

[¶ 4] As personal representative of Ms. Watts' estate, Mr. Watts brought a wrongful death suit on behalf of her heirs. He claimed the State was negligent by:

- releasing Mr. Grady from the Wyoming State Penitentiary and transferring him to the Honor Farm;
- failing to provide for Ms. Watts' safety and security;
- failing to "provide the security and reasonably safe conditions necessary to protect contract workers" from persons known to be extremely dangerous such as Mr. Grady;
- failing to "imprison and guard" Mr. Grady and other dangerous inmates in a reasonable manner;
- failing to operate the administration building in a safe and secure manner;
- providing an insufficient number of detention officers at the Honor Farm;
- improperly training, supervising and managing the detention officers at the Honor Farm;

- failing to provide Ms. Watts with security from dangerous inmates;

- failing to prevent Mr. Grady from attacking and killing Ms. Watts.

[¶ 5] The State filed a motion for summary judgment, asserting it was immune from suit under the WGCA, Wyo. Stat. Ann. §§ 1–39–101, *et seq.* (LexisNexis 2003). Mr. Watts argued that § 1–39–106, which waives immunity for "the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building," applied to his claims. Mr. Watts argues that the "lack of sufficient guards, surveillance over the stairs and area where Tammy Watts traveled to the medical offices and locating and operating the medical offices in the Administration Building in a fashion that permitted the inmates direct, unobserved access to the medical offices between 6:00 and 6:30 a.m. when Tammy Watts was there by herself" fell within the waiver of immunity in § 1–39–106.

[¶ 6] The district court denied the State's motion for a summary judgment, stating:

1. The State asserts no exception of the Wyoming Governmental Claims Act (Wyo. Stat. §§ 1–39–101 through 1–39–117) that permits the estate of Tammy Watts to bring this lawsuit.

. . . .

3. Plaintiff asserts that Defendants are liable pursuant to Wyo. Stat. § 1–39–106[,] i.e. Tammy Watts' death was caused by the negligence in Defendants' operation or maintenance of the Wyoming Honor Farm.

4. Genuine issues of material fact exist as to the negligence, if any, of Defendants in the operation and maintenance of the Wyoming State Honor Farm, including but not limited to the number of security officers on duty the morning of Tammy Watt's murder, the lack of security cameras in certain areas of the facility, Tammy Watts' duties as a nurse at the Honor Farm, and inherent risks, if any, of such employment.

[¶ 7] The State filed a notice of appeal or, in the alternative, a petition for writ of review, seeking appellate review of the district court's ruling on its claim it was immune from suit. We granted a writ of review.

## SUMMARY JUDGMENT STANDARD

[¶ 8] Summary judgment motions are governed by W.R.C.P. 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a district court's summary judgment rulings *de novo,* using the same materials and following the same standards as the district court. The facts are reviewed from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006); *Garcia v. Lawson,* 928 P.2d 1164, 1166 (Wyo.1996).

## DISCUSSION

### 1. *Jurisdiction*

[¶ 9] Before we consider the merits, we will address whether we have jurisdiction over this appeal and the proper procedure for obtaining judicial review of a denial of a motion for summary judgment on the basis of immunity.[1] Generally, the denial of a motion for summary judgment is not an appealable final order. *Gilstrap v. June Eisele Warren Trust,* 2005 WY 21, ¶ 7, 106 P.3d 858, 861 (Wyo.2005); *Wolter v. Equitable Resources Energy Co.,* 979 P.2d 948, 953 (Wyo. 1999). However, we have recognized an exception to the general rule when a district court refuses to dismiss a case on the basis of qualified immunity. *Park County v. Cooney,* 845 P.2d 346, 349 (Wyo.1992).

The United States Supreme Court has held . . . that a federal district court's denial of a motion to dismiss based on qualified immunity was "an appealable 'final decision' * * * notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,*

1. We issued an order requiring the parties to brief the jurisdiction issue.

472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The Court reasoned that qualified immunity provides "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original). In other words, unless the order denying dismissal can be reviewed before trial, it can never be effectively reviewed at all, because the defendant will have already suffered an irreparable loss to his immunity from suit.

. . . .

State courts are divided on whether interlocutory appeal is available under these circumstances. We believe the state decisions which allow appeal, for the reasons detailed in *Mitchell* as cited above, are better reasoned; and we therefore hold that an order denying dismissal of a claim based on qualified immunity is an order appealable to this court. *See Henke v. Superior Court*, 161 Ariz. 96, 775 P.2d 1160, 1162–64 (Ariz.[App.]1989).

*Id.*

■ [¶ 10] We have, in the past, granted a writ of review for the purpose of examining a denial of a governmental entity's motion for summary judgment on the basis of immunity under the WGCA. *See, e.g., City of Cheyenne v. Huitt*, 844 P.2d 1102 (Wyo.1993). However, the same policies which favor an exception to the general rule in qualified immunity cases that summary judgment denials are not appealable apply to claims of governmental immunity. We conclude, therefore, an order denying a summary judgment on a claim of governmental immunity is appealable and it is not necessary to grant discretionary review in such circumstances. Because we have jurisdiction to consider the State's appeal of the district court's order denying its motion for summary judgment on the immunity issue, the writ of review is superfluous and we, therefore, dismiss it as unnecessarily granted.

**2. Section 1–39–106**

■ [¶ 11]   Section 1–39–104(a) states:

(a) A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112 and limited by W.S. 1–39–121.

[¶ 12]   Mr. Watts argued, and the district court apparently agreed, his claims fell within the waiver of immunity in § 1–39–106. Section 1–39–106 states:

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, recreation area or public park.

■   [¶ 13]   In order to resolve this case, we must interpret the statutory language. "Questions of statutory interpretation are matters of law." *Chevron U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 43, ¶ 10, 154 P.3d 331, 334 (Wyo.2007), citing *Powder River Coal Co. v. Wyo. Dept. of Revenue*, 2006 WY 137, ¶ 9, 145 P.3d 442, 446 (Wyo. 2006). In interpreting statutes, our task is to give effect to the legislature's intent. We look first to the plain meaning of the language chosen by the legislature and apply that meaning if the language is clear and unambiguous. "A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability." *RME Petroleum Co. v. Wyo. Dep't of Revenue*, 2007 WY 16, ¶ 25, 150 P.3d 673, 683 (Wyo. 2007). "All statutes must be construed in *pari materia;* and in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony." *State ex rel. Dep't of Revenue v. UPRC*, 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo.2003). *See also, Lance Oil & Gas Co. v. Wyo. Dep't of Revenue*, 2004 WY 156, ¶ 4, 101 P.3d 899, 902 (Wyo.2004). If, however, the wording of a statute is ambiguous or capable of varying interpretations, we employ well-accepted rules of statutory construction. *Chevron*, ¶ 10, 154 P.3d at 334.

[¶ 14]   Our case law includes specific principles that apply when interpreting the

WGCA. The WGCA is considered a close-ended tort claims act, which means that a claim is barred by governmental immunity unless it falls within one of the statutory exceptions. *City of Torrington v. Cottier*, 2006 WY 145, ¶ 7, 145 P.3d 1274, 1277 (Wyo. 2006); *Sawyer v. City of Sheridan*, 793 P.2d 476, 478 (Wyo.1990). While the statement that the WGCA is a close-ended act is made consistently throughout our precedent, in reviewing cases decided over the years since the WGCA was first enacted, we find some inconsistency with regard to how the act should be interpreted.

[¶ 15] One group of cases states that the WGCA should be interpreted liberally. *See, e.g., Hurst v. State*, 698 P.2d 1130, 1132 (Wyo.1985); *Troyer v. State Dep't of Health and Soc. Servs.*, 722 P.2d 158, 162 (Wyo. 1986). In *Hurst*, the Court stated that the WGCA should be liberally construed, but did not cite any authority for that statement. *Troyer* cited to *Hurst* and *Thomson v. Wyo. In–Stream Flow Committee*, 651 P.2d 778 (Wyo.1982) for the proposition that the WGCA should be interpreted liberally. However, *Thomson* did not address the WGCA and, while discussing the argument that the laws at issue in that case should be interpreted liberally, stated:

> The argument is made that the constitutional and statutory provisions before us should be construed liberally. There is no statutory provision for liberal construction. Section 8–1–103(a)(i), W.S.1977, provides the rule of construction for statutes unless "plainly contrary to the intent of the legislature: (i) Words and phrases shall be taken in their ordinary and usual sense * * * *." By a liberal interpretation, it is only meant that words should not be forced out of their natural meaning and should receive a fair and reasonable construction so as to obtain the objects for which a statute is designed. Liberal construction does not require that words be

forced out of their natural meaning. *First National Bank & Trust Company of Wyoming v. Brimmer, Wyo.*, 504 P.2d 1367 (1973).

*Thomson,* 651 P.2d at 789.[2]

[¶ 16] Moreover, although we ruled that immunity was waived in *Stovall,* in *Hurst* and *Troyer* we concluded that the state was immune from suit because the claims made in those cases did not fall within a statutory exception. None of these cases relied in any significant way on the "liberal" interpretation principle. More importantly, even when announcing a rule of liberal construction, the cases emphasized that "a liberal construction does not require that words be accorded a forced, strained, or unnatural meaning, or warrant an extension of the statute to the suppression of supposed evils or the effectuation of conjectural objects and purposes not referred to, nor indicated in any of the terms used. Crawford, *Construction of Statutes* § 238 at 451–452 (1940)." *Hurst,* 698 P.2d at 1133.

[¶ 17] The liberal construction concept is also, arguably, supported by Wyo. Stat. Ann. § 1–1–101 (LexisNexis 2007), which states:

> The Code of Civil Procedure [this title] and all proceedings under it shall be liberally construed to promote its object and assist the parties in obtaining justice. The rule of common law that statutes in derogation thereof must be strictly construed has no application to the Code of Civil Procedure, but this shall not be so construed as to require a liberal construction of provisions affecting personal liberty, relating to amercement or of a penal nature.

We discussed § 1–1–101 in the context of the WGCA in *Soles v. State,* 809 P.2d 772 (Wyo. 1991). In that case, we stated that § 1–1–101 must be tempered by the plain statement of purpose of the WGCA in Wyo. Stat. Ann. § 1–39–102:

---

**2.** *State v. Stovall,* 648 P.2d 543 (Wyo.1982) could also be argued to promote a liberal interpretation of the WGCA. *Stovall* stated that the general rule requiring strict interpretation of statutes which are in derogation of common law did not necessarily apply to the WGCA because it was "not entirely in derogation of common law." *Id.* at

548. Moreover, *Stovall* rejected a strict construction of the statute because it would result in an absurd result. *Id.* Considered in its entirety, we are not convinced that *Stovall* stands for the proposition that the WGCA should be liberally construed.

(a) The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the Wyoming Supreme Court decision of *Oroz v. Board of County Commissioners,* 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the state, state revenues may only be expended upon legislative appropriation. This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers. This act is intended to retain any common law defenses which a defendant may have by virtue of decisions from this or other jurisdictions.

(b) In the case of the state, this act abolishes all judicially created categories such as "governmental" or "proprietary" functions and "discretionary" or "ministerial" acts previously used by the courts to determine immunity or liability. This act does not impose nor allow the imposition of strict liability for acts of governmental entities or public employees.

*Id.* at 774. *Soles* also reiterated that even when a statute is liberally interpreted, the court is still required to give the words used their plain meaning. *Id.*

[¶ 18] Another group of cases advances a "strict construction" rule for the WGCA. In *Martinez v. City of Cheyenne,* 791 P.2d 949, 956 (Wyo.1990), we said statutes that waive sovereign immunity must be strictly construed. We cited *Harrison v. Wyo. Liquor Comm'n,* 63 Wyo. 13, 177 P.2d 397 (1947) for this principle. Harrison was decided before adoption of the WGCA; however, it stated:

It is generally held that statutes authorizing suit against the state are to be strictly construed, since they are in derogation of the state's sovereignty 59 C.J. 303. And "the history of sovereign immunity and the

practical necessity of unfettered freedom for government from crippling interferences require a restriction of suability to the terms of the consent, as to persons, courts and procedure." *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121.

*Id.* at 399. In *Harbel v. Wintermute,* 883 P.2d 359, 364 (Wyo.1994), we stated that in "interpreting the [WGCA], this court must strictly construe the statutory exceptions to immunity against potential claimants and, conversely, liberally construe the grant of immunity in favor of the governmental entity." *Harbel* cited Martinez as authority for that principle. *Id.*

[¶ 19] More recent cases have not spoken in terms of a strict or liberal construction of the WGCA. Instead, they simply state the principle that the WGCA is a close-ended act in which immunity is the rule and liability is the exception. *See, e.g., Sponsel v. Park County,* 2006 WY 6, ¶ 8, 126 P.3d 105, 108 (Wyo.2006). That statement is completely in accord with the stated purpose of the WGCA and the language used by the legislature in § 1–39–104—"a governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided [by statute.]" Further, it is consistent with our typical rules of statutory interpretation which include the tenet that "[c]ourts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions." *Weyerhaeuser Co. v. Walters,* 707 P.2d 733, 738 (Wyo.1985). *See also, Sponsel,* ¶ 9, 126 P.3d at 108.

[¶ 20] Thus, we conclude the general rule in Wyoming is that the government is immune from liability, and, "[u]nless a claim falls within one of the statutory exceptions to governmental immunity, it will be barred." *Cottier,* ¶ 7, 145 P.3d at 1277. *See also, Newberry v. Board of County Comm'rs of Fremont County,* 919 P.2d 141, 145 (Wyo.1996). We will use our standard rules of statutory construction to determine whether the legislature intended that immunity be waived for a particular claim and will not resort to reliance upon previous unsupported and unnec-

essary suggestions that the act is to be interpreted either liberally or strictly.

[¶ 21] The plain language of § 1–39–106 states that immunity is waived for negligence by a governmental entity's employees in the "operation" or "maintenance" of "any building." The parties take differing positions on whether Mr. Watts' claims pertain to the "operation" of a building. The term "operation" is not defined in the statute; thus, we use the ordinary and obvious meaning of the term. *Cottier*, ¶ 8, 145 P.3d at 1278. In *Cottier*, we recognized the following definitions of operation:

> The American Heritage College Dictionary 975 (4th ed.2004), defines "operation" as the "state of being operative or functional." *See also* Webster's Ninth New Collegiate Dictionary 827 (1991). Black's Law Dictionary 1092 (6th ed.1990), defines "operation" as "the process of operating or mode of action."

*Id.* Using these definitions, § 1–39–106 waives immunity for the State's negligence in making the building functional.

[¶ 22] The parties disagree as to whether the statute waives immunity for operation of the physical building itself or the Honor Farm as an organization or entity. Mr. Watts argues that the statute should be read broadly because the administration building, where the murder took place, is part of the penal institution and the building's operation must be viewed in light of its purpose. The State argues that the district court incorrectly interpreted the statutory waiver of immunity as applying to the operation of the Honor Farm as an institution rather than the operation of the building structure. In other words, it argues that the waiver of immunity is limited to matters pertaining to the building structure itself rather than the Honor Farm as a penal institution.

[¶ 23] We construe a statutory provision to harmonize it with other provisions relating to the same subject matter. Some of the other statutes waiving governmental immunity pertain to the operation of specific types of institutions. For example, § 1–39–109 waives immunity for the "negligence of public employees while acting within the scope of their duties in the operation of any public hospital[.]" If we were to accept Mr. Watts' broad interpretation of the waiver of immunity for operation of public buildings, there would be no need to specifically waive immunity for the operation of hospitals because such negligence would already be subsumed in the statute waiving immunity for operation of hospital buildings. Thus, the context of § 1–39–106 within the WGCA indicates that the legislature intended the waiver to extend only to the function of the building itself rather than the entity operated within the building. If the legislature had meant to waive immunity for operation of a penal institution, it could have done so expressly. *See, e.g.,* Colo.Rev.Stat. Ann. § 24–10–106(b) (LexisNexis 2007) (specifying governmental liability for negligence in operation of correctional facilities and jails). In accordance with our rules of statutory interpretation, we will not expand the waiver of immunity to include matters not expressly stated by the legislature.

[¶ 24] Mr. Watts argues that *Cottier* supports his argument that § 1–39–106 should be read to include operation of the Honor Farm as an entity. In that case, we were dealing with the waiver of immunity for operation of a public utility in § 1–39–108. *Cottier*, ¶ 12, 145 P.3d at 1279. This provision of the WGCA waives immunity for "operation" of public utilities, but not "maintenance," and the issue was whether the clearing of sewer lines fell into the category of "operation" or "maintenance." We concluded that because the sewer lines could not function, or "operate," without being cleared, that activity was necessarily included in the term "operation" and immunity was waived for failing to keep the sewer lines free from obstruction. *Id.,* ¶ 12, 145 P.3d at 1280. Nevertheless, we fail to see how that holding supports Mr. Watts' claim that, when the legislature waived immunity for negligence in operation of a building, it intended to include the entity that occupied the building. Unlike with public utilities and hospitals, the legislature did not waive immunity for negligence in the operation of penal institutions.

[¶ 25] Moreover, we have, in prior cases, limited the reach of § 1–39–106 in accor-

dance with its plain language. In *Huitt*, 844 P.2d at 1105, we stated:

> [t]he plain and ordinary meaning of the words "operation or maintenance of any building" does not encompass the deliberate destruction of it. In the context of the Act, the operation of a building is not the same as an operation on a building, and while the maintenance of a building is that done on or to a building, that done under maintenance is just the opposite of the destruction of it.

In *Soles*, 809 P.2d at 773–74, we ruled that inspection of a building did not fall within the definition of maintenance of a public building.

[¶ 26] Both parties direct us to cases from New Mexico to support their respective positions. New Mexico's governmental claims act is similar to Wyoming's. The analogous New Mexico statute states that governmental immunity is waived for "liability for damages ... caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M. Stat. § 41–4–6(A) (LexisNexis 2007). Because of these similarities, one commentator has stated that New Mexico decisions "should be consulted to interpret like provisions" of the Wyoming act. L. Wolfe, *Comment, Wyoming's Governmental Claims Act: Sovereign Immunity with Exceptions—A Statutory Analysis*, 15 Land & Water L.Rev. 619, 623 (1980). *See also, Cottier*, ¶ 12 n. 5, 145 P.3d at 1279.

[¶ 27] Unfortunately, the New Mexico decisions interpreting its public building statute do not give us clear guidance. In fact, it is not unfair to say the New Mexico courts have followed a winding and tortured path in interpreting their statute. One line of cases specifically holds that the public building exception does not waive immunity for negligence in the security, custody and classification of inmates. *Wittkowski v. State*, 103 N.M. 526, 710 P.2d 93, 97 (Ct.App.1985), *overruled on other grounds by Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987); *Gallegos v. State*, 107 N.M. 349, 758 P.2d 299, 301 (Ct.App.1987); *Archibeque v. Moya*, 116 N.M. 616, 866 P.2d 344, 347 (1993).

[¶ 28] In *Wittkowski*, two violent and psychotic inmates escaped from a New Mexico minimum security facility and crossed the border into Colorado where they killed the plaintiff's decedent during a liquor store robbery. *Wittkowski*, 710 P.2d at 94–95. The complaint alleged the New Mexico authorities failed to properly classify the prisoners and utilize proper means to ensure they did not escape. *Id.* The New Mexico court of appeals held that the public building exception did not waive immunity for negligence in the security, custody and classification of inmates. *Id.* at 97. The court ruled the statute did not apply because "the injuries alleged did not occur due to a physical defect in the building." *Id.* Similarly in *Gallegos*, 758 P.2d at 301, the court of appeals applied the holding of *Wittkowski* and ruled that immunity was not waived for negligence in failing to keep a mop wringer, which was used as a weapon by other inmates in the plaintiff inmate's assault, away from the assailants.

[¶ 29] The New Mexico Supreme Court confirmed the *Wittkowski* and *Gallegos* decisions in *Archibeque*, 866 P.2d at 347, which involved a certified question from the Tenth Circuit Court of Appeals. A penitentiary employee had negligently classified Archibeque as an inmate that could be released into the general population and he was subsequently assaulted by other prisoners. *Id.* at 346. The court ruled that, when the employee determined the plaintiff could be released into the general population, she was performing an administrative function and was not operating or maintaining the prison's physical premises. *Id.* at 347. The opinion specifically distinguished other cases in which the "public building" exception had been read more broadly, ruling that they "left intact the rule that the security, custody, and classification of inmates does not comprise the 'operation' and 'maintenance' of penitentiary premises." *Id.* at 348, citing *Bober v. New Mexico State Fair*, 111 N.M. 644, 808 P.2d 614 (1991) and *Castillo v. County of Santa Fe*, 107 N.M. 204, 755 P.2d 48 (1988). The court noted the difference between negligence in operation of a public building, for which immunity was waived by

the legislature, and negligence in operation of the corrections system, for which immunity had not been waived. *Id.* at 347.

[¶ 30] Other cases, including those referred to in *Archibeque*, read the "public building" exception more broadly. *See, e.g., Bober*, 808 P.2d 614 (holding the plaintiff stated a claim under the public buildings exception for an injury arising from an unsafe condition on State Fair grounds even though the accident occurred outside of the grounds); *Castillo*, 755 P.2d 48 (holding that a common area surrounding a publicly owned housing project was a part of the public building and allowing a claim for an unsafe condition involving dogs roaming loose in the common area); and *Leithead v. City of Santa Fe*, 123 N.M. 353, 940 P.2d 459 (Ct.App.1997) (ruling immunity was waived for negligence in operating a public swimming pool without sufficient guards because it was a dangerous condition on the physical premises which affected the swimming public at large). In those cases, the New Mexico appellate courts allowed claims to be brought under the public building exception for unsafe conditions on public property which endangered the general public or a certain class of persons.

[¶ 31] In *Rivera v. King*, 108 N.M. 5, 765 P.2d 1187, 1194 (Ct.App.1988), the plaintiff brought a wrongful death claim after her husband, who was an inmate in the penitentiary, was tortured to death by other inmates during a riot. The New Mexico court of appeals ruled, in part, that the plaintiff had properly stated a claim that the state failed to "timely renovate or repair riot control grilles so that they could be operated by remote control ...". *Id.* at 1194. That claim, arguably, implicated the state's responsibility to maintain the physical premises.

[¶ 32] In *Callaway v. New Mexico Dep't of Corrections*, 117 N.M. 637, 875 P.2d 393 (Ct.App.1994), the New Mexico court of appeals seemed to back away from *Wittkowski* and its progeny and adopt a broader interpretation of the New Mexico public buildings immunity waiver in the context of prisons. The court of appeals allowed an inmate's claim that the state officials were negligent under the public building exception.

[W]e hold that Plaintiff has stated a claim sufficient to waive immunity under Section 41-4-6 because Defendants knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable.

*Id.* at 399. The court of appeals remarked that, unlike in *Archibeque* where only the individual victim was endangered by the state's actions, the alleged condition in *Callaway* exposed the general prison population to danger. The New Mexico Supreme Court refused to hear the *Callaway* case on appeal. *Id.* at 393, *cert. denied*, May 17, 1994.

[¶ 33] In *Espinoza v. Town of Taos*, 120 N.M. 680, 905 P.2d 718 (1995), the Supreme Court discussed the *Callaway* decision and remarked that the court of appeals simply allowed a claim for negligent security practices which resulted in unsafe conditions for the entire prison population. *Id.* at 722. The court was able to reconcile the cases by stating that in all of the cases where the claims had been allowed, the negligent conduct had "itself created unsafe conditions for the general public." *Id.*

[¶ 34] In a case outside of the prison context, the New Mexico court of appeals ruled that a student who was injured when he fell into a window that contained regular glass instead of safety glass and was not fitted with any safety guards to prevent someone from falling through the window stated a claim under the public buildings exception. *Williams v. Central Consol. School Dist.*, 124 N.M. 488, 952 P.2d 978, 979–81 (Ct.App.1997). The ruling was based, in part, on the factual finding that the applicable building codes required that the window be altered to ensure the safety of the students. *Id.*

[¶ 35] In a more recent decision, the New Mexico Supreme Court broadly read the statute and allowed a claim brought by the parents of a student who died of an asthma attack at school to proceed. *Upton v. Clovis Municipal School Dist.*, 140 N.M. 205, 141

P.3d 1259 (2006). The parents claimed that the school district operated the school in a manner which put their daughter and other similarly situated students at risk. The New Mexico Supreme Court held that the failure of the school to follow safety procedures for students with special needs impacted the safe operation of the school building and, therefore, fell within the statutory waiver of immunity for negligence in the operation of public buildings. *Id.* at 1262–65.

[¶ 36] We find no clear rationale in the New Mexico cases for interpreting "operation of a building" to include activities unrelated to the physical building. However, the New Mexico cases have clearly held, and we have no difficulty agreeing, that matters pertaining to the security, custody and classification of inmates are not cognizable under the public buildings exception, provided those matters do not concern the physical structure of the building. We are not, however, inclined to agree that any "unsafe condition," beyond those involving the building itself, should come within the statute, especially when interpreted as broadly as the New Mexico Supreme Court did in Upton. Instead, we believe the waiver of immunity in Wyoming was intended to apply only if the unsafe condition is due to a physical defect in the building. The concept of physical defect would include any safety features mandated by applicable law, as recognized by the New Mexico court of appeals in *Williams.*

[¶ 37] This Court is more inclined to agree with Maine's interpretation of its public buildings exception, also similar to § 1–39–106. Me.Rev.Stat. Ann. 14 § 8104–A(2) (2007) states in pertinent part:

> PUBLIC BUILDINGS. A governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building.

Interpreting this provision, the Maine Supreme Court has ruled that the "operation of a public building exception to immunity . . . must implicate the physical structure of the public building." *Lightfoot v. School Admin. Dist. No. 35,* 816 A.2d 63, 66 (Me.2003). Thus, the exception did not apply to allegations that the decedent was negligently placed in a closed room that contained the instruments necessary for him to hang himself. *Jensen v. Augusta Mental Health Inst.,* 574 A.2d 885, 886 (Me.1990). In *Lightfoot,* the plaintiff was a wrestler and the coach required the team to run through the school hallways during practice. While taking part in this activity one day, the plaintiff put his arm through a glass window on the side of an open fire door. *Lightfoot,* 816 A.2d at 65. The Maine Supreme Court stated that the focus of the plaintiff's complaint was not the operation of the building, but the manner in which the wrestling team was permitted to use it. *Id.* at 66. The court, therefore, decided that the plaintiff's claims were not cognizable under the waiver of immunity for negligence in the operation of a public building because there was no claim that the "hallways, the fire door openings, or the fire doors were physically operated in an unsafe manner, or improperly maintained." *Id.* at 66–67. We agree with Maine's interpretation of its statute. In order to be cognizable under the public buildings exception the claimed negligence must pertain to the physical building.

[¶ 38] We, therefore, conclude the clear and unambiguous language of § 1–39–106, within the context of the rest of the WGCA, indicates that the legislature intended to limit the waiver of immunity to negligence associated with the function of the building structure and did not intend to extend the waiver to negligence associated with operation of the penal institution within the building. The operation and maintenance responsibility includes fixtures attached to the building. Moreover, like the New Mexico court of appeals recognized in *Williams,* if applicable building codes, statutes or ordinances mandate that certain safety features be installed or in use in the building, then liability would extend to injuries arising from the failure of the governmental entity to install or maintain those devices. We have no difficulty stating that such matters fall within the definition of operation of public buildings because they are necessary to make the building legally functional. We do, as always, take this opportunity to invite the legislature to revise

the statute if we have not interpreted it in accordance with its intent.

[¶ 39] We turn now to the substance of Mr. Watts' claims. The allegations that the State improperly moved Mr. Grady to the Honor Farm, had insufficient or improperly trained or supervised guards at the Honor Farm, and failed to imprison and guard Mr. Grady properly do not pertain to the physical structure of the building and, consequently, do not fall within the exception.

[¶ 40] With regard to his lack of surveillance claim, Mr. Watts argues that security cameras should have been installed so that the guards could monitor the east entrance. The Honor Farm warden testified that security cameras had been ordered for the medical office area, but they apparently had not been installed at the time of Ms. Watts' death. Mr. Watts submitted an affidavit from a former correctional officer at the Honor Farm. He stated that, in his opinion, "if there had been security cameras to monitor the entrance to the medical offices, it is unlikely Floyd Grady could have prevented detection of his presence and Tammy Watts would not have been killed." Mr. Watts does not, however, direct us to any building code or other law that mandated installation of security cameras in the medical offices. Thus, Mr. Watts' claims of insufficient surveillance or the lack of security cameras do not fall within the waiver.

[¶ 41] Mr. Watts claims the State was negligent by placing the medical offices in the basement and that action falls within the statutory waiver of immunity for public buildings. We cannot agree. The record indicates that the medical offices had previously been located on the ground floor of the administration building, but, because more room was needed, they had been moved to the basement at least a year before the homicide occurred. The decision to place the medical offices in the basement was administrative and did not pertain to the physical structure of the building. Instead, it was a decision concerning how the Honor Farm would be operated as an entity. Mr. Watts' claim in that regard is not, therefore, cognizable under § 1–39–106.

[¶ 42] Finally, Mr. Watts also asserts the State was negligent in providing for Ms. Watts' security and safety. As we stated earlier, matters pertaining to the security, custody and classification of inmates are not cognizable under the public building exception to the WGCA. Because Mr. Watts does not argue that any particular physical defect in the building resulted in Ms. Watts' death, his claim does not fall within the parameters of § 1–39–106.

## CONCLUSION

[¶ 43] Section 1–39–106 does not waive the State's immunity for negligence in the operation of the corrections system. Instead, it specifically limits the exception to matters associated with the physical building itself. Because Mr. Watts' claims do not pertain to the physical condition of a building at the Wyoming Honor Farm, the State is entitled to a judgment as a matter of law.

[¶ 44] Case No. S–07–0050, writ of review, is dismissed. Case No. S–07–0095, appeal, is reversed and remanded to the district court for proceedings consistent with this opinion.